## PARKER *v.* GORTATOWSKY *et al.*

1. Actual possession of real property puts the world on inquiry as to the right under which the occupant holds.
2. Where actual possession was held by an agent, if no inquiry was made, the presumption is that inquiry would have developed under what right, title, or interest the possessor held.
3. Where the undisputed evidence showed that lessees of an opera-house had placed an agent in charge of it as manager, and that, after the theatrical season had closed, the doors were locked and the agent had the keys, a purchaser who bought the property from the owner and knew of the possession of the agent, and of his having the keys, was put on inquiry as to the claim or right under which the agent held, and was charged with notice of what such inquiry, reasonably prosecuted, would have developed. Where he bought without inquiry, he could not claim to stand as an innocent purchaser without notice, and that he took the property freed from the rights of the lessees.

4. Where an owner of an opera-house rented it to certain lessees for a term of one year, with a provision in the lease that at the termination of the year they should have the option of leasing it for a term of two years at a named price; and where, at the close of the year, they wrote to the owner, "We will continue the theater;" to which he replied. acknowledging the receipt of this letter and stating, "I understand this to mean that you will continue the rent of opera-house as per terms of contract;" and thereafter the lessees continued in possession and use of the opera-house, without objection or further contract, during the theatrical season: *Held*, that this amounted to an exercise of the option to lease for the two years, and was binding on both parties. And one who bought from the owner after this, and while the lessees remained in actual possession, took subject to their rights.

5. There was no error in admitting in evidence the lease and the letters referred to in the preceding note. That they were not attested and recorded like a deed did not render them inadmissible.

6. Where the purchaser of the property brought suit against the lessees to recover the possession, a verdict for the defendant was proper.

7. While there was some conflict in the evidence, that introduced on behalf of the plaintiff and most favorable to her required a verdict for the defendants.

Submitted July 18, 1906.—Decided February 14, 1907.

Rehearing denied March 1, 1907.

Complaint for land.    Before Judge Parker.    Ware superior court.    August 19, 1905.

Mrs. Willie L. Parker brought suit against A. C. and L. E. Gortatowsky and G. R. Brinson, seeking to recover possession of a certain theatre or opera-house, together with mesne profits, alleging it to be wrongfully held by them.. The defendants denied the right of the plaintiff to recover.    On the trial, under the direction of the court, the jury found for the defendants.    A motion for a new trial was overruled, and the plaintiff excepted.

Bailey owned a building, a portion of which was fitted up and used as an opera-house.    This was leased by him to A. C. and L. E. Gortatowsky.    The lease was dated March 31, 1903, and provided for leasing the theatre for one year from April 1, for the sum of $200, evidenced by notes payable November 1 and December 1, 1903, and January 1, February 1, March 1, and April 1, 1904.; "the said Gortatowskys, at the expiration of the first year, to have the option of leasing said theatre at $300 per annum for a term of two years, and at the expiration of that lease to have the option of extending it for three years more."    Before the expiration of the original term the lessees sent a telegram to the owner, who was

absent from home, offering to pay him $200 for a lease for another year. To this he made no answer. On March 30, 1904, the lessees wrote to the owner a letter in which they stated, "We will continue the theatre." To this he replied by letter dated April 2, acknowledging the receipt of their letter and containing the statement, "I understand this to mean that you will continue the rent of opera-house as per terms of contract." They continued in possession, and, according to the testimony for them, several theatrical performances were had at the theatre after that time. The owner made no demand for rent during that time, nor did the lessees tender him rent or demand any additional contract. On May 31, 1904, Bailey, the owner, conveyed the property to Mrs. Willie L. Parker, whose husband acted as her agent in making the purchase. He admitted, while on the stand as a witness, that he knew that one Brinson had the keys of the theatre before the conveyance was made, that he made no inquiry from Brinson as to the right under which he held, and that he also knew that the Gortatowskys had had a lease on the theatre before he bought it. He contended that Bailey told him that their lease had expired, and to get the keys from Brinson, and that after the conveyance he requested the latter to give him the keys, but they were refused on the ground that the Gortatowskys had or claimed a lease on the property. He stated that he relied on what Bailey told him. He also stated, that sometime before the purchase he had mentioned to Brinson that he might probably buy the opera-house, and asked the latter how he would like to join him; and that after consideration Brinson declined to do so. Whether this occurred before the correspondence between the Gortatowskys and Bailey, or afterward, did not appear. He also made the following statement: "After I got my deed from Mr. Bailey, I never made any demand on the Gortatowsky brothers for rent, or notes, or anything of that kind. If we had agreed on the price, then I would have made a demand for the money. They did not make me an offer for it; they told me that they would give me the money that they had paid Mr. Bailey, and I told them I would not accept $300 rental for the opera-house." Bailey denied that he made the statement to Parker to which the latter testified. He said that he had made the trade with one Dean; that he stated to Dean the facts as they were, as best he could remember them, and that he did not believe the Gor-

tatowskys could hold the opera-house, under the circumstances, as he did not consider that a new contract had been made; that he did not make the trade with Parker, but simply made a deed to him under the trade with Dean. Brinson testified, that he was the local manager for the Gortatowskys; that Parker talked with him before the sale, and asked what he thought of it as a purchase; and that he replied that he thought it was a good investment, and told Parker that he did not know what kind of lease the Gortatowskys had on it, but from hearsay he thought that it was for one year, with the privilege of renewal for five years; and that he advised Parker to see the lease before he purchased.

*J. L. Sweat,* for plaintiff in error.

*D. F. Crosland* and *J. Walter Bennett,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

There was conflict in the evidence as to what was said to Parker, the plaintiff's husband and agent, about the lease, before the purchase was made. But he admitted himself that he knew that the Gortatowskys had had a lease upon the theater, and that the keys were in the hands of Brinson, their local manager, the theatrical season having closed; and that he made no inquiry of Brinson as to the manner of his holding, or the lease to the Gortatowskys. According to his own evidence he was put on inquiry, but failed to inquire, and was chargeable with notice of whatever facts in regard to the matter would have been developed by inquiry of Brinson. In the absence of such inquiry, it may be presumed that, had it been made, the right under which Brinson held would have been discovered, or Parker's attention would have been directed to the rights of the Gortatowskys. "Ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of parties." Civil Code, §3933; *Austin* v. *Southern Home Asso.,* 122 *Ga.* 439. Relatively to the rights of the Gortatowskys, therefore, the purchaser stood in no better position than Bailey. Under the lease the lessees, at the termination of the first year, were to have the option of leasing the theatre at $300 per annum, for a term of two years, with a further option at the termination of that lease. Before the termination of the first year they notified the owner by letter that they would "continue the theatre;" and he acknowledged receipt of the letter, and stated that he understood this to mean that they would continue the rent of the opera-house "as per terms

of contract." This was a notification by the lessees and an acceptance by the lessor, and bound both of them. If the execution of a further lease had been necessary, either side could have compelled it by an equitable proceeding. Both parties apparently treated the contract as closed, and the lessees continued in possession and use of the property for some two months without objection. While they did not tender the rent to the lessor, he did not demand it or make any complaint, or give them any notice, or call for any execution of a more formal contract.

The only matter which suggests itself as being desirable to make clearer would be the time when the rental of $300 was payable. The former rent had been payable in instalments; and if it had been provided that the rent for the additional term should also be payable in instalments, and that the times and amounts of the instalments remained to be agreed upon, there would have been no perfect contract. But where an agreement is made to rent property for a year for $300, expressed in one sum, without more, the natural construction is that it should be paid at one time. The question is not directly involved here whether such rental was payable at the beginning of the year or at the close; but if it be treated as payable at the first of the rent year, the conduct of the parties was such as to prevent a forfeiture from resulting by reason of delay. The conduct of Bailey, the original owner, has been mentioned above. It appears also that he was absent from the State for at least a portion of the time. Parker testified: "I told them I would not accept $300 rental for the opera-house." The lessees had previously paid their rent when due, and there was nothing to indicate any inability on their part to pay the rent in the future. *Irwin* v. *Askew,* 74 *Ga.* 582; *Biggers* v. *Pace,* 5 *Ga.* 171, 175; 28 Am. & Eng. Enc. Law (2d ed.), 8. If they paid the rent, the lessees were entitled to the additional term of two years, as specified in the lease. "The covenant on the part of the lessor to renew is a covenant real, the burden of which rests with the reversion, and may therefore be enforced against the grantee of the reversion." 18 Am. & Eng. Enc. Law (2d ed.), 694.

While, in this State, "all renting or leasing of such real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, and to pass no estate out of the landlord, and to give only the usufruct, unless the con-

trary be agreed upon by parties to the contract, and so stated therein" (Civil Code, §3115), yet, as against a purchaser from the landlord, with notice, a like rule to that stated above prevails. In some jurisdictions an equitable title in a defendant can not be shown in defense of an action of ejectment; and there it has been held that unless a renewal has been executed, a lessee can not defend an action of ejectment by his lessor on the ground that he was entitled to a renewal. In other jurisdictions equitable defenses may be interposed to an action of ejectment, and a tenant entitled to a renewal may interpose such defense to an action of ejectment by his lessor. 18 Am. & Eng. Enc. Law (2d ed.), 694, 695; Appeal of Pittsb. & A. Drove Yard Co., 123 Penn. St. 250. In this State one in possession of realty may set up a perfect equity as a defense to an action at law for the recovery of the land. *Ogden* v. *Dodge County,* 97 *Ga.* 461. The uncontradicted evidence demanded the verdict. No question in regard to the option of extending the lease for three years further is now properly before us.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*

### ON MOTION FOR REHEARING.

LUMPKIN, J. The inquiry referred to in the headnotes, which Parker failed to make, was from Brinson, who Parker knew had the keys. If the expression that he made no inquiry, used in the headnotes, might be construed to mean that there was no evidence that he made any inquiry from any one, we think the opinion makes it clear that he made no inquiry from Brinson when he should have made it. A mere general statement that "sometime before" he had talked to Brinson and asked how the latter would like to go in with him and help him run the house if he bought it, and that after at first considering the matter favorably, Brinson then declined, was not enough. It did not appear when this was, whether before or after the Gortatowskys had exercised their option, or even during Brinson's agency. Nor did it appear that the proposed arrangement was to take place at once, or conflict with the Gortatowskys' lease. When Parker was put on inquiry from Brinson, this was not met by inquiry from Bailey. Bailey denied Parker's account of this. But taking Parker's own evidence, he was, in law, put on the duty of making an inquiry from Brinson, which he did not make.               *Motion denied.*