*W. E. Mann, W. C. Martin,* and *C. N. King,* for defendant.

---

## WALL *et al. v.* LOUISVILLE & NASHVILLE RAILROAD COMPANY *et al.*

1. Where a vendee of land enters into actual possession and pays the entire purchase-price, he acquires a perfect equity upon the strength of which he can successfully defend in ejectment against his vendor or subsequent grantee, although the deed may be invalid on account of an imperfect or impossible description of the land.

2. The deed from the City of Milledgeville to the Milledgeville Railroad Company was admissible in evidence, as tending to prove, in connection with other evidence, certain elements of the defendants' equitable ownership of the land in dispute.

3. The facts relied on to constitute an estoppel against the defendants attacking the plaintiffs' deed were insufficient for that purpose.

MAY 12, 1915.

Ejectment. Before Judge Park. Baldwin superior court. April 13, 1914.

*Hines & Vinson,* for plaintiffs.

*Joseph B. & Bryan Cumming* and *Allen & Pottle,* for defendants.

27

Evans, P. J. The case is in ejectment, and the locus is a triangular piece of land in square or block 155, in the City of Milledgeville, lying between the tracks of the Central of Georgia Railway Company and the Georgia Railroad and Banking Company, containing about three fourths of an acre. Both parties claim by purchase from the City of Milledgeville. The plaintiffs' deed is dated July 9, 1909, and the defendants' deed is dated May 28, 1863. The defendants contend that the older deed, under which they claim, was intended to convey the land in dispute; that their predecessor in title entered into possession; that that possession, as well as the possession of their successor in title, has never been disturbed; and that although the number of the block as contained in the description is erroneously stated, nevertheless, under the facts (which will be developed later), the deed was sufficient to convey title.

The deed from the City to the Milledgeville Railroad Company, dated May 28, 1863, recites that by virtue of the act of the General Assembly approved December 30, 1836, the Mayor and Aldermen of the City of Milledgeville "did advertise, for lease for the term of one thousand years, a certain lot of land within the corporate limits of said city, known and distinguished in the plan of said city as part of square number one hundred and fifty eight (158), containing three quarters of an acre, more or less, situate, lying, and being the northwest common of said city, which said lot of land was leased in the City of Milledgeville on the sixth day of May, 1863, and was leased to Milledgeville Railway Company at the sum of one hundred dollars." In consideration of $100 the deed purports to convey, for the term of one thousand years, "a part of Square No. 158, lying between M. & E. & M. R., containing three quarters of an acre, more or less." It was shown that M. & E. & M. R. meant the Milledgeville and Eatonton Railroad Company and the Milledgeville Railroad Company, and it was admitted that the defendants in the action were successors in title to the Milledgeville Railroad Company, and that the Milledgeville and Eatonton Railroad Company is now the Central of Georgia Railway Company. At the time the deed was executed the track of the Milledgeville and Eatonton Railroad was constructed and the line of the Milledgeville Railroad Company was located, and the track was laid five years thereafter on the same route originally selected and marked out. Squares 155 and 158 are separated by Jackson Street.

Both railroads' tracks enter square 155 from Jackson Street and converge to a point near the opposite side of the square, leaving in that square a triangular piece of land, which is the locus in quo. Only one of the railroads traverses square 158. An engraved map of the City of Milledgeville was received in evidence. The date of the map was not given. In this map the railroads were delineated as converging to a point on square 158, and as not touching square 155. A surveyor introduced by the plaintiffs testified, that the city map did not correctly show the location of the railroads; that the map shows their intersection in 158, when as a matter of fact the two roads intersect a few feet beyond the west boundary of lot 155. It was shown that the track-hands of the Georgia Railroad and Banking Company used this triangular area as a garden spot, with more or less continuity, from 1868 to the time the plaintiffs undertook to build a compress in 1909. In 1893 the railroad company built a turntable on part of the land, and about seven years later laid a side-track on the land in dispute, extending from the apex of the triangle to Jackson street. The side-track is within fifty feet of the center of the main track, and part of the turntable is within fifty feet of the center of the main railroad track. In 1909 the plaintiffs addressed a letter to the manager of the lessees of the defendant railroad company, to the effect that they had discovered that the locus in quo belonged to the railroad company, and inquired if they could secure the land for the purpose of erecting a compress. The manager of the lessees had no authority to sell any land of the Georgia Railroad and Banking Company. An employee of the lessee companies, who had no authority to dispose of land belonging to the lessees, and whose duty was to look after the right of way and make contracts for the lessees at the instance of the superintendent, came to Milledgeville and had an interview with the plaintiffs. After examining the maps and the deed, this real-estate agent was of the opinion that the locus in quo did not fall within the description of the railroad's deed from the city, and so informed the plaintiffs. Thereafter the plaintiffs took the matter up with the city, which sold them the land for a consideration of $25, and made them the deed above referred to. The plaintiffs bought the land for the purpose of erecting a compress, and were proceeding to do so when the agents of the defendants refused to permit them to enter the premises. Thereupon they brought eject-

ment. The foregoing facts appearing from the evidence,. as submitted by both sides, the court directed a verdict for the defendants.

1. Two descriptions are contained in the deed, and they are complementary of each other. The land is described as lying between two named railroads. The limitation in the deed upon the extent of the intervening land is its location in square 158. The draftsman of the deed was probably misled by the erroneous delineation of the railroads on the city map. There is only one railroad traversing square 158, and hence the description fails for lack of definiteness. But the evidence establishes that the city conveyed to the railroad company a piece of land between two named railroads for a valuable consideration, the receipt of which was acknowledged; that the railroad company entered into possession of a tract of land lying between the railroads as being the land purchased; and that possession was not disputed by the city until its grant to the plaintiffs in 1909, more than forty years afterwards. Thus we have a vendee in possession, with purchase-money paid, under a deed containing an indefinite description, or one impossible of location. Where a vendee of land enters into actual possession and pays the entire purchase-price, he acquires a perfect equity upon the strength of which he can successfully defend in ejectment against his vendor or subsequent grantee, although the deed may be invalid on account of an imperfect or impossible description. *Grace* v. *Means,* 129 *Ga.* 638 (59 S. E. 811).

2. The deed of 1863 to the Milledgeville Railroad Company was relevant, because of its recitals and admissions as establishing certain elements of the defendant's equitable ownership of the land in dispute.

3. The plaintiffs in error further contend that the defendants were estopped from asserting title against their deed from the city. The facts relied upon to constitute an estoppel were, that in 1909 the plaintiffs, desiring to erect a compress upon the land in controversy, communicated with the general manager of the Georgia Railroad and Banking Company their desire to purchase the land; that shortly thereafter the real-estate agent of the Georgia Railroad investigated the matter, examined the land and the records of the city, and declared to the plaintiffs that in his opinion, from the investigation, the railroad had no title to the land in controversy; that the plaintiffs then stated to the real-estate agent that if the

land belonged to the city they could probably obtain it from the city; and that after this interview with the real-estate agent of the Georgia Railroad the plaintiffs purchased the land from the City of Milledgeville, went into possession, and placed upon the lot some brick and machinery, preparatory to the erection of the compress, when the agents and servants of the defendants drove the plaintiffs' servants off and took possession of the land and fenced it. The Georgia Railroad and Banking Company, the successor in title to the Milledgeville Railroad Company, had leased its property to the Louisville and Nashville and the Atlantic Coast Line Railroad Companies, which were made defendants in the action. The person with whom the plaintiffs communicated as general manager was the officer and agent of the lessees. Likewise the real-estate agent with whom the plaintiffs communicated was an employee of the lessees. Neither of these officers had any authority to bind the Georgia Railroad and Banking Company by any declaration. Moreover, the plaintiffs seem to have acted upon the result of a conclusion stated by the real-estate agent as to the condition of the title, from an investigation jointly made by him and the plaintiffs. Where the estoppel relates to the title to real estate, it is essential to the application of the doctrine that the party claiming to have been influenced by the conduct or declaration of another was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel. Civil Code (1910), § 5737; *Wilkins v. McGehee,* 86 *Ga.* 764 (13 S. E. 84).

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*