## 62579, 62580. TURNER COMMUNICATIONS CORPORATION et al. v. HICKCOX et al.; and vice versa.

CARLEY, Judge.

In 1970 appellant and cross-appellee Turner Communications Corporation (Turner), as lessee, entered into a ground lease with Bonnie H. Mascolo, as lessor. The stated purpose of the lease was for the "construction, operation and maintenance of an outdoor advertising display" and was for a three-year term, commencing on February 15, 1970, and expiring on February 14, 1973. The lease contained the following renewal provision: "Should either Lessor or Lessee desire to terminate this lease at the expiration of the term set forth above, notice of such intention shall be given the other party in writing at least ninety (90) days prior to such date of expiration. If neither party gives the other such written notice, this lease shall be

deemed automatically renewed for a like term as that set forth above upon the same terms and conditions as set forth herein. Should either Lessor or Lessee desire to terminate this lease at the expiration of the renewal term, notice of such intent shall be given the other party in writing at least ninety (90) days prior to such date of expiration. If neither party gives the other such written notice, this lease shall be deemed automatically renewed for a term of one (1) year upon the same terms and conditions as set forth herein and shall be deemed automatically renewed from year to year thereafter unless and until such written notice is given in the manner provided herein. All materials and displays placed upon the property by Lessee shall remain Lessee's property, and Lessee may remove the same at any time during the term or extended term of this agreement or within thirty (30) days after termination or cancellation of this agreement." Pursuant to this lease Turner erected an advertising display on the property and leased space thereon to others.

In 1977 the property was sold to appellees and cross-appellants Hickcox and Ferland (Buyers). Apparently the Buyers were not previously informed of the existence of Turner's written lease with Mascolo. It is undisputed, however that the Buyers were aware of the existence of the advertising display on the property prior to the sale and that it was Turner's. No inquiry was made about Turner's display signs prior to purchasing the property because, according to the Buyers, it was "assumed that once we bought the property if we wanted them taken down and removed we could simply tell the owner to get them off the property." It was some time after the sale that the Buyers first contacted Turner regarding the removal of the signs. What transpired in this and in subsequent conversations is in dispute, including whether the Buyers were informed that Turner was claiming possession under the written Mascolo lease. It is undisputed, however, that the first written communication from the Buyers to Turner was by a letter dated October 11, 1977. This letter stated: "After repeatedly calling your office and no response, we are sending this by registered mail to notify you to remove your advertising structures from our property immediately. There is no contract in effect now and has not been since we purchased the above described properties." A meeting between the Buyers and Turner was held on December 2, 1977. According to the Buyers, it was in late November of 1977 that they first learned of the existence of a lease between Mascolo and Turner. At the December 2, 1977 meeting Turner produced the lease and indicated to the Buyers that the ninety-day termination-renewal requirement therein would be operative. It was agreed that the Buyers' letter of October 11 to Turner was dated more than 90 days prior to the next expiration of

the Mascolo lease, February 14, 1978. Turner would not agree, however, that the Buyers' letter of October 11 constituted satisfactory notice of termination of the written lease under its terms. It was, therefore, apparently Turner's position that the lease was automatically renewed for a one-year term commencing February 15, 1978.

In November of 1978 the Buyers commenced the instant action against Turner. The Buyers' amended complaint, insofar as it is relevant in this appeal, alleged that Turner's tenancy had ended and, in addition to possession of the premises, the Buyers sought damages and possession of and title to Turner's signs as "abandoned" trade fixtures. Pursuant to Code Ann. § 61-304, the trial court entered an order allowing Turner to remain in possession of the premises pending the outcome of the suit conditioned upon Turner's payment into court of rent. The parties continued under this arrangement until such time as Turner gave the Buyers timely notice pursuant to the Mascolo lease that it would not renew for the term commencing February 15, 1980 and would vacate the premises thereafter. Accordingly, that count of the Buyers' petition seeking possession of the premises was mooted and was subsequently deleted by them. However, since Turner had also indicated to the Buyers that, pursuant to the lease, the advertising signs would be removed from the property within 30 days after February 14, 1980, the Buyers successfully enjoined Turner's removal of the signs and interference with the Buyers' use of them pending the determination of their ownership. The Buyers were also ordered to pay into court the net advertising proceeds they derived from the signs pending resolution of which party was entitled thereto.

The Buyers subsequently moved for partial summary judgment in the instant case on their claim for damages and for title to the signs themselves. The trial court conducted a hearing on the motion and found, as a matter of law, the following: That the Buyers' letter to Turner of October 11, 1977 was "adequate notice" of their intent to terminate the lease effective February 14, 1978; That because Turner had previously, at the December 2, 1977 meeting, notified the Buyers of its refusal to accept the October 11 letter as adequate notice and of its refusal to surrender at the end of the term, the Buyers were not required to make further demand for possession of the premises after February 15, 1978; That, under the lease, Turner had 30 days after February 14, 1978 to remove its signs from the property and when it failed to do so the structures were abandoned to the Buyers; and, that Turner's refusal to surrender the premises after February 14, 1978 was an unlawful interference with the Buyers' property rights. Accordingly, the trial court entered summary judgment establishing

Turner's liability for damages and granting the Buyers title to and possession of the signs outright. All other issues, including the amount of damages recoverable for Turner's interference with the Buyer's property rights and attorney's fees, were left for determination at trial. The trial court further required the Buyers to continue to pay such sums into court as were derived from the signs in the event Turner brought the instant appeal. In Case Number 62579 Turner appeals from the order granting summary judgment to the Buyers. In Case Number 62580 the Buyers cross-appeal from the order insofar as it failed to hold the Mascolo lease "void" and insofar as it required them to continue to pay revenues into the registry of the court pending resolution of this appeal.

### Case No. 62579

1. Turner first urges that the trial court erred in finding the letter of October 11, 1977 to be "adequate notice" of the Buyers' intent to terminate the lease on February 14, 1978. "Where one purchases realty from a landlord, he takes with notice of whatever right or title the tenant in possession at the time may have. [Cits.]" *Blanton v. Mosely,* 133 Ga. App. 144 (210 SE2d 368) (1974). Thus, the Buyers purchased the property subject to Turner's rights under the Mascolo lease. *Parker v. Gortatowsky,* 127 Ga. 560, 561 (4) (56 SE 846) (1906). This is true regardless of whether the lease was or was not recorded. *King & Prince Surf Hotel, Inc. v. McLendon,* 74 Ga. App. 805, 809 (2b) (41 SE2d 556) (1947). Accordingly, Turner "was entitled to stand on whatever agreement [it] had with the [Buyers'] predecessor in title...," including the provision of the Mascolo lease that timely written notice of termination-nonrenewal be made. *Stepp v. Richman,* 75 Ga. App. 169, 171 (42 SE2d 773) (1947). The Buyers were not entitled to "assume" that Turner's tenancy was terminable by them in a manner other than that provided in the lease under which Turner claimed possession. See *Stepp,* 75 Ga. App. 169, supra. Therefore, in order to terminate Turner's lease effective February 14, 1977, it was incumbent upon the Buyers to give timely written notice of their intent not to renew it for the term beginning February 15, 1978. The "notice" contained in the letter of October 11, 1977, was clearly insufficient to convey the Buyers' intent not to renew the lease. Indeed, this letter unequivocally states that the Buyers were demanding "immediate" possession. This is insufficient notice of the Buyers' intent concerning termination-nonrenewal at the end of the term. See generally *Shiflett v. Anchor Rome Mills,* 78 Ga. App. 428 (50 SE2d 853) (1948).

The Buyers assert, in essence, that they were unaware of the existence of the written Mascolo lease when they mailed the letter of

October 11, 1977, assuming that Turner was a tenant at sufferance. Because Turner apparently did not reveal that it was claiming possession under the terms of that lease and was not, as the Buyers assumed, a tenant at sufferance until the meeting of December 2, 1977, after the time within which the Buyers could exercise the option to terminate under the lease, the Buyers contend that Turner is estopped to assert that the letter of October 11, 1977, was "insufficient" notice of their intent to terminate at the end of the term. We find this argument unpersuasive. "[A]n estoppel of this nature cannot arise where both parties have equal knowledge or means of obtaining knowledge of the facts alleged to constitute an estoppel. [Cits.]" *Yancey Bros. Co. v. Dehco, Inc.,* 108 Ga. App. 875, 876 (134 SE2d 828) (1964). Under the Buyers' own evidence they received actual knowledge of the existence of the lease when they made belated inquiry of Mascolo, an inquiry which, under the law, they should have made prior to purchase. See *Parker,* 127 Ga. 560 (3), supra. Furthermore, and more importantly, as discussed above, it is presumed that the Buyers, by failing to make inquiry before purchasing of the property, had notice of Turner's rights under the lease and, under such circumstances, Turner is entitled to stand on its rights under the lease and assert them against the Buyers. "Ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of parties. [Cit.]" *Parker,* 127 Ga. 560, 563, supra. Thus, it is the Buyers' duty to inquire before purchase not Turner's subsequent failure to reveal which is determinative of the rights of the parties. We know of no rule of law which would estop Turner from asserting that the Buyers had such pre-existing notice of the written lease and its terms on October 11, 1977 or any time prior to 90 days before the automatic renewal date and yet failed to seek termination-nonrenewal of the existing tenancy rather than the "immediate" termination of a mere tenancy at sufferance. Under the evidence the Buyers had notice of the written lease and of Turner's rights thereunder and cannot contend that their letter of October 11, 1977, which sought immediate termination of a tenancy at sufferance, was an effective notice of their intent to terminate the written lease at the end of the term by nonrenewal. See *Stepp,* 75 Ga. App. 169, supra; *King & Prince Surf Hotel,* 74 Ga. App. 805, supra. The trial court erred in finding the letter of October 11, 1977 to be "adequate notice" of the Buyers' intent to terminate the Mascolo lease at the end of the term.

2. The holding in Division 1 of this opinion renders unnecessary any consideration of remaining enumerations of error, except to say specifically that because the tenancy was not terminated it was clearly error to grant the Buyers title to and possession of Turner's

trade fixtures. Code Ann. § 61-110.

*Case No. 62580*

3. The Buyers assert that the trial court erred in failing to hold the Mascolo lease void for vagueness of the legal description of the leased premises and that Turner was therefore no more than a tenant at will. We find this argument meritless. While there is a dispute over what were the contents of the original lease relative to the legal description of the premises, even accepting the Buyers' version that no description whatsoever was provided therein, the Buyers are not entitled to rely upon that "vagueness" in the instant action. See *Roe v. Doe,* 246 Ga. 138, 141 (4) (268 SE2d 901) (1980). Since, under the circumstances of this case, Turner was entitled to stand as against the Buyers on whatever agreement it had with Mascolo, it must follow that unless Mascolo could successfully dispossess Turner because of "vagueness" of the legal description, neither can the Buyers. See generally *Wall v. L & N Railroad Co.,* 143 Ga. 417, 420 (1) (85 SE 325) (1915). Turner went into possession under the lease in 1970 and no question concerning the legal description of the leased premises was raised until many years later when the Buyers discovered, after failing to make inquiry before purchase, that Turner was in possession under a written lease. Under these circumstances, the fact that the original lease "may be invalid on account of an imperfect or impossible description" affords the Buyers no remedy. *Wall,* 143 Ga. 420 (1), supra. The invalidity of the lease for vagueness of legal description is not a viable issue in this case.

4. Consideration of remaining enumerations of error on the cross-appeal is rendered unnecessary by the holdings in Divisions 1, 2 and 3 of this opinion.

*Judgment in Case Number 62579 reversed. Judgment in Case Number 62580 affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED JANUARY 11, 1982 —
REHEARING DENIED JANUARY 27, 1982 —

*David H. Flint, Mary Jo Workman,* for appellants.
*Fletcher Thompson,* for appellees.