**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 1, 2024**

# In the Court of Appeals of Georgia

A24A0531. MAIN STREET BURGER, INC. v. ESTATE OF
 DAVID W. COLLIER et al.

A24A0532. ESTATE OF DAVID W. COLLIER et al. v.
 KENNESAW DOWNTOWN DEVELOPMENT
 AUTHORITY et al.

DOYLE, Presiding Judge.

This appeal arises from a declaratory judgment issued in a case filed by the Kennesaw Downtown Development Authority ("KDDA") against defendants Estate of David W. Collier; Kathryn A. Collier (collectively with the estate, "the Colliers"); and Collier RLT, LLC, and included as a non-defendant respondent KDDA's subtenant, Main Street Burger, Inc., d/b/a BurgerFi ("Main Street"). The action was filed after the Colliers refused to honor an attempt by KDDA and Main Street to renew their lease of the Colliers' property. Main Street filed cross-claims against the

Colliers, who also filed counterclaims and cross-claims against KDDA and Main Street, including a claim for a declaratory judgment.

In case number A24A0531, Main Street appeals, arguing that the trial court erred (1) by finding that Provision 32 of the lease allows the Colliers to transfer the property to a successor that does not expressly assume the lease, resulting in the successor's ability to unilaterally terminate the lease[1]; and (2) by failing to correctly apply the cannons of contract construction to resolve any ambiguous language in the lease. In case number A24A0532, the Colliers cross-appeal, arguing that the trial court erred (1) by enjoining them from exercising their right to transfer the property or otherwise alter the status quo during pendency of the case; and (2) by issuing a coercive declaratory judgment. For the reasons that follow, we affirm in part and reverse in part the declaratory judgment order.

The record shows that in 2012, KDDA sought to revitalize the downtown area of Kennesaw, Georgia. In pursuit of this goal, KDDA entered into a lease agreement with the Colliers regarding their property at 2844 Main Street in Kennesaw ("the property"). Simultaneously, KDDA also entered into a sublease with Main Street as

---

[1] For purposes of this opinion, discussion of the lease includes the sublease between KDDA and Main Street.

a subtenant for the property. Essentially, the agreements resulted in an infusion of public money from KDDA and further investment by Main Street to restore and expand the property in order to open it as a restaurant and revitalize the area.

In exchange for the investment into their property, the Colliers agreed to lease the property to the KDDA and its subtenant Main Street for an initial ten-year term beginning December 20, 2012, followed by two five-year renewal terms. Specifically, the renewal provision provided:

> 4.2 Tenant shall have the right to exercise its option to renew this Lease for two renewal periods, each renewal being for a five (5) year period beyond the expiration of the original term or the extended term by providing written request to Landlord no later than ninety (90) days prior to the expiration of the term. At any request for extension, Tenant and Landlord agree to negotiate in good faith the Base Rental for any extension period; however, in no event will the Base Rental exceed the previous term's Base Rental increasing at a rate of 3 [percent] every two years.[2]

---

[2] The lease further provided that "[e]xtension of this Lease may be granted only if Tenant is in full compliance with all terms of this Lease. During any such extension period, the terms of this lease shall be binding on all parties herein." There is no contention that Main Street or KDDA have breached the lease.

As the first ten years came to an end, KDDA and Main Street engaged in negotiations with David concerning the first five-year renewal, agreeing to pay the highest rate of rent under the lease. KDDA and Main Street repeatedly tried to effectuate the renewal, but David unexpectedly passed away in January 2022.

After David's death, KDDA and Main Street notified Kathryn and the Estate that they intended to renew the lease, but negotiations stalled, and a representative of the Colliers offered to renew the lease for a much higher rent amount than the rate in the lease. KDDA and Main Street reiterated their intent to renew, and eventually, the representative declared that the Colliers were not obligated to renew the lease and intended to allow it to expire in December 2022. The Colliers also purportedly received a letter of intent to purchase the property, which was communicated by the representative to KDDA as an offer, but in his offer of sale to KDDA, the representative included several of his own properties as a package sale.

As a result of the foregoing, KDDA filed its complaint for breach of contract or anticipatory breach based on the Colliers' refusal to honor the renewal option in the lease, and it also requested an injunction against any dispossessory action and requested a declaratory judgment finding that the right of first refusal to purchase the

property had been triggered by the letter of intent received by the Colliers. Main Street filed its response as a third-party and filed cross-claims against the Colliers, incorporating KDDA's complaint and asserting similar claims and requests for damages, declaratory judgment, and injunctive relief.

The Colliers answered and asserted a claim for breach of contract and requested a declaratory judgment stating that they could "transfer the property . . . [,] and the transferee need not assume the lease and could terminate the lease."[3] Thereafter, Main Street petitioned for an injunction, and the Colliers requested a declaration as to their right to transfer ownership of the property to a successor that could terminate the lease. A hearing was scheduled on Main Street's injunction petition, but instead of ruling on that, the trial court, at the behest of the Colliers, addressed the declaratory judgment issue.

1. (a) *Language of the lease.* The lease contains several provisions that are pertinent to the issues on appeal. First, according to the lease, "[a]ll rights, powers

---

[3] After David passed away, Collier RLT was formed. KDDA alleged in its complaint that all or part of the ownership of the property was transferred to Collier RLT as of its formation, but in the Colliers' brief in A24A0532, they claim that this transfer has not occurred. This is the entity around which the Colliers based their arguments regarding transfer and termination of the lease.

and privileges conferred hereunder upon parties hereto shall be cumulative but not restrictive to those given by law." The lease defines the "'Landlord' as [the Colliers], [their] heirs, representatives, assigns and successors in title to the Property.[4] ...*Except as otherwise provided herein, this Lease shall be binding upon and shall inure to the benefit of the parties hereto and their representative successors and assigns.*"[5]

As noted earlier, the initial lease term is ten years with two five-year renewals at the option of the tenant (not the landlord). It contains a right-of-first-refusal provision that requires the landlord to "first offer said property for sale to the Subtenant upon the same price (the "Offer Price") and terms as set out in [a third party's proposed] Purchase and Sale Agreement, less an amount to account for the improvements paid by Subtenant" in the event that the landlord receives a third-party offer it intends to accept.

With regard to termination of the lease by the landlord, there is no individual provision giving the landlord the power to unilaterally terminate the lease without cause prior to the end of the term or prior to the end of the renewals if those are opted

---

[4] The tenant is defined as KDDA and the tenant's sublease to Main Street was incorporated into the lease.

[5] (Emphasis supplied.)

for by the tenant. The lease contains some instances in which the landlord or tenant may elect to terminate the lease, including if the property is damaged or destroyed, if certain government orders are issued that would preclude use of the property or operation of a business, and if the property is condemned. In the event of an uncured default by the tenant, the landlord may terminate the lease, but there is no provision allowing unilateral termination without cause by the landlord.[6]

Finally, Provision 32, which the Colliers contend allows their successor to unilaterally terminate the lease, has two paragraphs and states:

> In the event of the sale, assignment or transfer by Landlord of its interest in the Property, Buildings or the Demised Premises or in this Lease (other than a collateral assignment to secure a debt of Landlord) to a successor in the interest who expressly assumes the obligations of Landlord hereunder, Landlord shall thereupon be released or discharged from all of its covenants and obligations hereunder, except such obligations as shall have accrued prior to any such sale, assignment or transfer; and Tenant agrees to look solely to such successor in interest of Landlord for performance of such obligations. Any deposits or other security given by Tenant to Landlord to secure performance of Tenant's obligations hereunder may be assigned by Landlord to such successor in

---

[6] There is no contention by the parties that any of these provisions allowing the Landlord to terminate have come to pass or are applicable to the scenario at hand.

interest of Landlord; and, upon acknowledgment by such successor of receipt of such security and its express assumption of the obligation to this Lease, Landlord's assignment of the Lease or of any or all of its rights herein shall in no manner affect Tenant's obligations hereunder. Tenant shall thereafter attorn and look to such assignee as Landlord, provided Tenant has first received written notice of such assignment of Landlord's interest.

In the event of the sale, assignment or transfer by Landlord of its interest in the Property, Buildings or the Demised Premises or in this Lease (other than a collateral assignment to secure a debt of Landlord) to a successor in the interest who does not expressly assume the obligations of Landlord hereunder, Landlord shall reimburse to Tenant the entire cost of all improvements made to the Demised Premises, as set forth in Exhibit C, at or prior to the transfer of Landlord's interest.

(b) *Trial court order.* After the hearing, the trial court declared that the Colliers could:

sell, transfer, or assign the property to a third party that does not expressly assume the Lease. The effect of doing so is they must pay [the KDDA and Main Street] the entire cost of all improvement. If the Colliers sell the property, they are further obligated to give the Subtenant the right of first refusal. . . . if they assign or transfer the property, they are not.

The trial court also declared that "[a] new owner who does not assume the Lease is not bound by the Lease because they did not assume it," and "[u]pon sale, transfer, or assignment, the Colliers are no longer bound by the Lease. Nor are they responsible for damages flowing from the new owner's choice not to assume the Lease because the Colliers will no longer own the [p]roperty and [will] have paid the penalty outlined in the lease." The trial court also noted that

> [t]he Colliers' Motion was included with and incorporated their Response to Main Street Burger's Motion for Interlocutory Injunction. With respect to the injunction motion, the Colliers represent that they "will not terminate the Lease unlawfully. The Colliers will not unlawfully evict [Main Street], or unlawfully transfer the building, or to be clear, do anything at all unlawful to interfere with [Main Street's] rights of occupancy." . . . Considering these representations, the Court reserves ruling on [Main Street's] motion but instructs the parties not to alter the status quo until the pending motions[7] have been resolved by the Court.

These appeals followed.

*Case No. A24A0531*

---

[7] This includes KDDA's and Main Street's pending motions for injunctive relief.

9

2. Main Street argues that the trial court erred in its interpretation of Provision 32 and the lease as a whole and erred by applying the rules of construction in its order on declaratory judgment to find that the Colliers could "sell, transfer, or assign the property" to a successor "that does not expressly assume the Lease" with the effect that Main Street's tenancy and the lease could be terminated by that successor.[8] We agree.

On "appeal from a declaratory judgment, this Court reviews the trial court's conclusions of law de novo, but will affirm the trial court's findings of fact under the

---

[8] Main Street does not challenge the finding that the provision requires the Colliers to pay the total amount of improvements prior to transferring the property under the second paragraph of Provision 32. Additionally, the parties do not dispute that, other things being equal, the Colliers may transfer the property. Nevertheless, given the outstanding motions for injunctive relief, and the assent by the Colliers at the hearing to maintain the status quo, this opinion affirms the trial court's order to the extent that it instructs the parties not to alter the status quo until further rulings by the trial court.

any evidence standard."[9] "[T]his Court's review of a trial court's construction of a contract is de novo."[10]

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[11]

"[A]mbiguity exists when a contract contains an uncertain meaning, is duplicitous, and indistinct, or when a word or phrase may be fairly understood in more than one

---

[9] (Punctuation and citation omitted.) *Phelps v. Phelps*, 370 Ga. App. 89 (894 SE2d 496) (2023), quoting *Brown v. Brown*, 359 Ga. App. 511, 517 (857 SE2d 505) (2021).

[10] (Citations and punctuation omitted.) *Langley v. MP Spring Lake*, 307 Ga. 321, 323 (834 SE2d 800) (2019).

[11] (Punctuation omitted.) *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (3) (743 SE2d 381) (2013), quoting *Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Ga.*, 301 Ga. App. 367, 368 (687 SE2d 640) (2009) .

way."[12] "On the other hand, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation."[13] Moreover, "a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms[, favoring] uphold[ing] the contract as a whole, and the whole contract should be looked to in arriving at the construction of any part."[14] Additionally, "[t]he laws which exist at the time and place of the making of a contract, enter into and form a part of it; and the

---

[12] (Citations and punctuation omitted). *AMAC Two, LLC v. Web Ltd.*, 370 Ga. App. 119, 121 (1) (894 SE2d 414) (2023), citing OCGA § 13-2-3; *Greenberg Farrow Architecture v. JMLS 1422, LLC*, 339 Ga. App. 325, 329 (1) (791 SE2d 635) (2016) ("An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations.") (citation and punctuation omitted).

[13] (Punctuation omitted.) *AMAC Two, LLC*, 370 Ga. App. at 122 (1), quoting *Citrus Tower Boulevard Imaging Center v. David S. Owens, MD, PC*, 325 Ga. App. 1, 8 (2) (752 SE2d 74) (2013).

[14] (Citations and punctuation omitted.) *AMAC Two, LLC*, 370 Ga. App. at 124-125 (1).

parties must be presumed to have contracted with reference to such laws and their effect on the subject matter."[15]

"Lease contracts are generally construed against the lessor[, u]nless the ambiguous provision appears in a form supplied by the lessee, or was prepared by the lessee, in which event it is to be construed against the party who drew it."[16] In this case, neither Main Street nor the Colliers drafted this lease, so the role of draftsman should not be weighed against either of those parties.[17]

Georgia case law holds that after the sale or transfer of property, if a

---

[15] (Citation and punctuation omitted.) *Magnetic Resonance Plus, Inc. v. Imaging System Intl.*, 273 Ga. 525, 527 (2) (543 SE2d 32) (2001).

[16] *Farm Supply v. Cook*, 116 Ga. App. 814, 818-819 & n.1 (2) (159 SE2d 128) (1967) ("[I]n cases of doubt, in contests between landlords and tenants, the issue will be resolved in favor of the tenant."). *Cook* collects cases on this question, and several cited therein announce that matters should be resolved in favor of tenants because landlords have the power to demand their own terms. See id. at 818-819 (2). Cf. *Peachtree on Peachtree Investors, Ltd. v. Reed Drug Co.*, 251 Ga. 692, 695 (1) (308 SE2d 825) (1983) ("Provisions in leases which result in a forfeiture of a tenant's possessory rights will be strictly construed.").

[17] The Colliers argued to the trial court that the contract should be construed in their favor because they negotiated "pro se," but they cite no law in support of this contention aside from the general law regarding construction of a document against the drafter versus and in favor of the non-drafter.

tenant is in possession of property[,] the purchaser of such property takes subject to the tenant's rights and where a tenant is holding under a written lease the landlord's vendee takes subject to the terms of such written lease and, while the vendee is not put on notice of secret agreements not a part of the lease, he is bound by the written provisions thereof.[18]

The Colliers have cited no law establishing that this rule should not apply in this instance.

Based on the plain language of Provision 32, the contract read as a whole, and the general law of leases, the trial court erred by finding that Provision 32 allows the Colliers to transfer the property to a successor, who by virtue of not "expressly

---

[18] *Richardson v. Lampley*, 107 Ga. App. 395, 396 (130 SE2d 268) (1963). See also *Turner Communications Corp. v. Hickcox*, 161 Ga. App. 79, 82 (1) (289 SE2d 260) (1982) (explaining that if "one purchases realty from a landlord, he takes with notice of whatever right or title the tenant in possession at the time may have. . . . This is true regardless of whether the lease was or was not recorded. [Thus, a lessee is] entitled to stand on whatever agreement it had with the [successor's] predecessor in title[,] including the provision of the . . . lease [regarding termination events]. . . . The [successors] were not entitled to 'assume' that [the] tenancy was terminable by them in a manner other than that provided in the lease under which [the lessee] claimed possession.") (citations and punctuation omitted); *King & Prince Surf Hotel, Inc. v. McLendon*, 74 Ga. App. 805, 808-809 (2) (a) & (2) (b) (41 SE2d 556) (1947) (explaining that the lease in effect at the time of the sale of the property applied to the successor, and the lessee was not required to enter into a new lease with the successor).

assuming the landlords obligations," may thereafter unilaterally terminate the lease. The plain language of the second paragraph of Provision 32 constitutes a pre-payment penalty clause in the event that the Colliers transfer, sell, or assign the property to a successor that does not expressly assume the obligations of the landlord. It is silent as to the rights of the successor.[19] It certainly does not give the successor an express right to terminate the lease, and as stated above, a successor to property that has an in-possession tenant takes that property subject to that tenant's rights and is bound by any written lease.[20]

The trial court interpreted the phrase "successor in the interest who does not expressly assume the obligations of the Landlord hereunder," to grant the successor the power to terminate the lease. We disagree that this is the correct reading of the second paragraph. The Provision contains two paragraphs, one in which the successor "expressly assumes the obligations of the Landlord herein" and one in which the successor "does not expressly assume the obligations of the Landlord hereunder."

---

[19] See, e.g., *Goodman v. Frolik & Co.*, 233 Ga. App. 376, 378 (1) (504 SE2d 223) (1998) (explaining that an obligation in a contract cannot be added in place of silence in the agreement).

[20] See *Richardson*, 107 Ga. App. at 396; *Hickcox*, 161 Ga. App. at 82 (1); *McLendon*, 74 Ga. App. at 808-809 (2) (a) & (2) (b).

15

These two phrases define the successors to which the appropriate paragraph applies, but the phrases do not define the rights of the successors, circumvent the applicable case law, or divest the tenant or subtenant of its rights thereunder.[21] Further reading of the first paragraph contains an explicit release of the Colliers from any further liability that accrues after a transfer of the lease to a successor who expressly assumes the obligations of the landlord. No such release of the Colliers is contained in the second paragraph.

The lease as a whole repeatedly provides an explicit right to termination in several other provisions, but such a right is not given to the successor in the second paragraph of Provision 32. Overall, the lease is deferential to maintaining the subtenant in the property for the duration of the initial ten-year term and two five-year renewals, as well as providing the subtenant with the opportunity to purchase the property in the event of a sale. To allow a successor under the second paragraph of Provision 32 to unilaterally terminate the lease after transfer would undermine the

---

[21] See *Cajun Contractors Inc. v. Peachtree Property Sub LLC*, 360 Ga. App. 390, 414 (3) (a) (861 SE2d 222) (2021) (explaining that "in construing contracts, the rules of grammatical construction usually govern"), quoting *L & B Constr. Co. v. Ragan Enterprises*, 267 Ga. 809, 813 (482 SE2d 279) (1997).

structure of the lease as a whole.[22] Moreover, while Provision 32 provides for a pre-payment penalty to the tenant in the event of such a transfer, this penalty relates to investment losses and does not provide restitution for any other potential injuries that arise from early termination of the lease or removal from the property.[23] Thus, the mere inclusion of the pre-payment penalty does not deprive the tenant and subtenant of their rights under general lease law.

Accordingly, we reverse the trial court's declaratory judgment to the extent it held that: the second paragraph of Provision 32 granted a successor the right to terminate the lease after transfer; "[a] new owner who does not assume the Lease is not bound by the Lease because they did not assume it[;]" and "[u]pon sale, transfer, or assignment, the Colliers are [neither] bound by the Lease[ n]or . . . responsible for damages flowing from the new owner's choice not to assume the Lease because the Colliers will no longer own the Property and [will] have paid the penalty outlined in the Lease."

---

[22] See *AMAC Two, LLC*, 370 Ga. App. at 122 (1).

[23] We agree with the trial court that Provision 32 requires an up-front payment from the Colliers in the event that such a transfer takes place, but this was not raised as error on appeal.

3. The Colliers argue that the trial court erred by enjoining them from transferring the property or otherwise altering the status quo, and by awarding coercive relief in its order.

In this case there were pending motions for injunctive relief that the trial court did not rule upon based on the Colliers' acquiescence at the hearing that they would not take any steps to affect the status quo, and as a result, the trial court did not rule on those motions. "'A party will not be heard to complain of error induced by [their] own conduct, nor to complain of errors expressly invited by [them].'"[24] We do not find the Colliers' arguments that they did not acquiesce to this ruling persuasive. Therefore, based on the Colliers' own statements to the trial court as well as lease provisions that may affect the plaintiffs' ability to seek certain remedies,[25] the trial

---

[24] *Video Warehouse, Inc. v. Newsome*, 285 Ga. App. 786, 788 (648 SE2d 124) (2007).

[25] Provision 38 states that
[a]nything contained in this Lease to the contrary notwithstanding, Tenant agrees that it shall look solely to the estate and property of the Landlord in the land and Buildings comprising the Property of which the Demised Premises form a part for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord for

court did not abuse its discretion by including in its declaratory judgment order the parties' agreement to maintain the status quo pending further progress is made on the case below. Thus, we affirm the order in this respect.

*Judgment affirmed in part and reversed in part in Case No. A24A0531. Judgment affirmed in Case No. A24A0532. Hodges and Watkins, JJ., concur.*

---

any default or breach by Landlord of any of its obligations under this Lease, subject, however, to the prior rights of the holder of any mortgage covering the Property or of Landlords interest therein in the Property. No other assets of Landlord or any partner thereof shall be subject to levy, execution or other judicial process for the satisfaction of Tenant's claim. This provision shall not be deemed, construed or interpreted to be or constitute an agreement, express or implied, between Landlord and Tenant that the Landlord's interest hereunder and in the Property shall be subject to impressment of an equitable lien or otherwise.