73606. BOARD OF REGENTS OF UNIVERSITY SYSTEM OF GEORGIA v. A. B. & E., INC.

(357 SE2d 100)

BIRDSONG, Chief Judge.

Contract Interpretation — Summary Judgment. In November 1962, the predecessor owner of the Title Building in downtown Atlanta leased floor space to the United States (the Army Corps of Engineers) through the agency of the General Services Administration (GSA). Through some 29 amendments to the basic lease, the period of the lease (together with space and design modifications) was extended to March 31, 1983. In April 1975, the then-owners of the Title Building employed the appellee A. B. & E., Inc. (ABE) to manage the building. Under the terms of the employment, ABE was entitled to receive commissions of 5 percent of the rentals from all tenant leases procured by ABE and any renewal of those leases. In 1980, it was stipulated in the agreement that ABE had procured the lease with GSA. On June 8, 1982, the Board of Regents of the University System of Georgia (Regents) closed their purchase of the Title Building, becoming the new owners and subjecting themselves to the provisions of the existing leases for space within the Title Building. ABE served as broker in the 1982 transaction. It seems to be uncontested that the provisions of 40 USC § 491 (h) (1) prohibit GSA from entering into any lease that obligates GSA for a period in excess of 20 years. Thus, a lease in 1983 could not constitute a renewal of the same 1962 lease. Prior to the expiration of the 1962 lease, GSA informed the Regents that the 1962 lease could not be renewed or extended as such and that a new lease for the existing leased space would be required. Certain modifications were mandated to accommodate disabled persons' use of the leased facilities plus a slight reduction in square feet and an increase in cost per square foot of leased space. On March 24, 1983, a new lease incorporating the changes was entered into between GSA and the Regents.

The purchase agreement provided in substance that the purchaser (Regents) would assume all obligations of the landlord or lessor under all tenant leases. In order to clarify the commission provisions pertaining to the basic leases, the purchase contract provided that in lieu of the sellers' obligation to pay commissions for leasing as set forth in the management agreement, the Regents agreed to pay commissions for leasing as set forth in purchase paragraph numbered

7. In pertinent part, the language of purchase paragraph numbered 7 provided for the payment of commissions by the Regents for all rents received for periods allocable after the closing date (March 24, 1983) including all renewals or extensions of the lease of November 1962. A reading of the documents makes it reasonably clear that "allocable rents" refer to rental payments made to the seller before the sale and to payments made to purchaser after the sale. Such a provision was necessitated because GSA rental payments were not made until the last day of the month as well as continuing to be paid pursuant to the provisions of the 1962 lease. The Regents agreed to assume and to perform the obligations of the seller under the tenant leases and in regard to the GSA lease to pay commissions to ABE of 5 percent of all rentals received for periods allocable after the date of the purchase closing, including all renewals and extensions of the tenant lease. Likewise, there seems to be agreement between ABE and the Regents as of March 24, 1983 that ABE would continue to receive commissions from the Regents in an amount of 5 percent of GSA rental receipts so long as the tenant remained in the Title Building under an existing lease agreement or a successive lease agreement.

On May 31, 1983, the Regents dispatched a letter to ABE stating in effect that the first rental payment from GSA under the March 4, 1983 purchase agreement was expected shortly and the 5 percent commission due ABE under the purchase agreement would be forwarded upon receipt of GSA's rental payment. Because of a dispute as to the exact amount of rental and thus commission due ABE, when ABE received the commission based upon the GSA rental payment, the commission payment was returned to the Regents for recalculation. The Regents referred the matter to the office of the Attorney General. Upon consideration of the purchase agreement, the Attorney General rendered an opinion that the Regents were not required to make any further commission payments to ABE and as a result the Regents sought a setoff against other sums previously paid as commissions under the 1962 lease.

ABE ultimately brought suit to recover commissions' payments denied by the Regents to be due. After discovery, ABE moved for summary judgment and the Regents moved for partial summary judgment. The trial court granted ABE summary judgment, awarding ABE $65,614.23 together with $6,123.61 interest and costs and denied summary judgment to the Regents. The Regents bring this appeal to the grant of summary judgment to ABE. *Held*:

The basic dispute between the parties lies in an interpretation of the purchase agreement wherein the Regents agreed to pay commissions on tenant leases including "renewals and extensions" of the said (1962) lease agreement. Inasmuch as the 1962 lease expired prior to March 24, 1983, and was not subject to renewal or extension, the Re-

gents argue in accordance with the ruling of the Attorney General that no commissions are due under the March 24, 1983 lease agreement with GSA. ABE on the contrary convinced the trial court that while the 1962 lease could not be extended, the substance of the 1962 lease was renewed because the same space under the same general terms was leased to and used by the Corps of Engineers in the lease executed by GSA on March 24, 1983. While there can be no dispute that the March 24, 1983 lease was a "new" lease, the dispute is whether the new lease is in effect nothing more than a "renewal" of the same basic terms and space that existed in the 1962 lease. In its order granting summary judgment to ABE, the court concluded that the language was not ambiguous but was not clear as to meaning, thus was "ripe for interpretation by the court." The trial court found that the language of the March 24, 1983 purchase agreement was intended by the parties to be a renewal in purpose and intent of the terms of the 1962 lease and that the parties intended the purchase agreement to treat the new lease with GSA to be tantamount to a continuation of the GSA lease whether it be denominated "new," or a renewal or extension of the 1962 lease. Thus the court concluded that the intent of the parties (the Regents and ABE) was that the 1983 lease was contemplated as carrying forward of the initial lease requiring the payment of continuing 5 percent payments of commissions to ABE from rents received from GSA. The court reached this conclusion because it found that the new lease was in practical terms no different from a renewal or an extension of an existing lease for under the facts, the same tenant was substantially occupying substantially the same space and on substantially the same terms as the initial lease, as amended.

It is axiomatic that a contract should be construed by the court where the language is undisputed but the meaning of that language is in dispute. OCGA § 13-2-1. It is the responsibility of the court to determine whether an ambiguity exists. *Salvatori Corp. v. Rubin*, 159 Ga. App. 369 (283 SE2d 326). If the contract does not require disentanglement of the language by a jury, i.e., the words used are plain and clear in their common usage, it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties. *Southern Fed. Savings &c. Assn. v. Lyle*, 249 Ga. 284 (290 SE2d 455); *Crooks v. Crim*, 159 Ga. App. 745 (285 SE2d 84). It is apparent from the order of the court that the trial court considered the language used in the contract to be words of common usage and not requiring jury interpretation. The court did not consider parol evidence but sought to give the words "renewal" and "extension" as used in paragraph 7 (D) of the purchase contract their usual and common significance. See *Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299 (99 SE2d 95); *Georgia Farm Bureau Mut. Ins.*

*Co. v. Ray*, 148 Ga. App. 85 (251 SE2d 34).

The substance of the Regents' argument is that the "general principle" (or underlying meaning) behind the word "including" preceding the words "renewal or extension" of said tenant lease limits the words "renewal or extension" to the 1962 lease only. Because the 1962 lease could not be renewed or extended and GSA had so informed the Regents, the lease was a new lease and thus did not require the continued payment of commissions for a renewal or extension of the 1962 lease.

The trial court found, however, that the understanding of the parties was that the Regents would pay to ABE 5 percent of all rentals received from GSA for periods allocable after the closing date. The court thus concluded that the "general principle" was intended to apply to rentals paid by GSA to the Regents after the closing date whether the rentals were paid pursuant to a renewal, an extension or a new lease just so long as the space and amount of rental was not significantly changed, a fact affirmatively found by the trial court.

The finding by the trial court that a "renewal" includes a continuation of the old by way of a new lease (under substantially the same terms) as well as the actual renewal of an old or existing lease is not without precedent. It is well established that a lease renewal may well be effectuated by way of a new lease. See *Walker v. Brooks Simmons Co.*, 44 Ga. App. 470, 472 (161 SE 659). Indeed, a number of cases have held that under appropriate circumstances the execution of a new lease is indispensable to a renewal. See *Hamby & Toomer v. Ga. Iron &c. Co.*, 127 Ga. 792 (56 SE 1033); *Krueger v. Paul*, 141 Ga. App. 73 (232 SE2d 611). In deciding whether a succeeding lease is substantially a renewal of a preceding lease or altogether a new lease, the determination can be based on whether the succeeding lease employs drastically different terms, not simply somewhat different considerations, i.e., is the lessee occupying substantially the same space under substantially the same terms? If the succeeding lease employs substantially the same terms as the preceeding lease, it may be considered a renewal even though technically a "new" lease. See *Hunter v. Benamy Realty Co.*, 115 Ga. App. 829 (156 SE2d 160).

Such was the conclusion of the trial court in this case. This holding finds support in view of the undisputed fact that both the Regents and ABE considered the March 24, 1983 lease to cover essentially the same space and to call for substantially the same rental payments and commissions (GSA having sought the best rental costs from several bidders) as called for under the 1962 lease (and notwithstanding the subsequently reached contrary conclusion of the Attorney General). Likewise this conclusion by the trial court finds support though not in any reported decisions of this state, there apparently being no such interpretations in the case law of this state. See *Zinn & Co. v. Shaw-*

*nee*, 148 FSupp. 322 (S.D. Ohio); *Rosenblum v. Lurie*, 128 Pa. Supr. 480 (194 A 204); *Zaniewski v. Mancinone*, 37 Conn. Supp. 698 (435 A2d 50). The Regents cite for our consideration *Plumbing Indus. Program v. Good*, 120 S2d 639 and *Ernest A. Carrere's Sons v. Levy*, 191 S 747. However, we note these two cases involved leases wherein the leases under consideration required a renewal of the existing lease by an affirmative exercise of that option. In each case the lessee did not affirmatively renew the option but entered into a new lease.

It is not disputed in this case that there was no renewable option under the 1962 lease for that right had expired as early as 1972. Thus when the purchase agreement and new lease were executed containing language that if any renewal of the existing lease with GSA occurred, and the Regents agreed to continue the 5 percent commission payments for rentals allocable after the purchase closing date the only logical meaning of that language was that if GSA continued as a lessee with the Regents in substantially the same terms as before, the Regents agreed to continue to pay the commissions. It is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless. *Burch v. Ragan*, 92 Ga. App. 605 (89 SE2d 541); OCGA § 13-2-2 (4).

We are satisfied that the trial court properly effectuated the intent of the parties by construing the word "renewal" to encompass the new contract entered into between the Regents and GSA and thus requiring the Regents to continue the 5 percent commission payments to ABE. The statutory limitation upon GSA denying it the right to renew the 1962 contract beyond the 20-year period is not a restriction upon GSA to enter into a continuation of the 1962 terms by way of a new contract embodying the same general conditions, so long as the new contract did not exceed a term of twenty years, a factor not present in this litigation.

In view of the above, we find no error in the grant of summary judgment to ABE nor in the denial of partial summary judgment to the Regents.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED APRIL 6, 1987 —
REHEARING DENIED APRIL 20, 1987 —

*Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, J. Robert Coleman, Daniel M. Formby, Senior Assistant Attorneys General*, for appellant.

*George B. Haley, Jr., Michael W. Tyler*, for appellee.

*Quinton S. King, Edward C. Stone*, amici curiae.