A89A0039. POUNDS et al. v. HOSPITAL AUTHORITY OF GWINNETT COUNTY.

(382 SE2d 602)

DEEN, Presiding Judge.

Appellant Pounds operated an ambulance service in Gwinnett County, Georgia, for several years prior to the incidents giving rise to the action below. In July 1981 Pounds, doing business as Gwinnett Ambulance Service, Inc. (Gwinnett Ambulance), was granted by the Gwinnett County Hospital Authority (the Authority) an exclusive five-year franchise to provide both primary (from scene of illness/injury to local hospital) and secondary (from hospital to another, more specialized or otherwise more appropriate treatment facility) transport for ill or injured persons within the county. The franchise agreement contained clauses pertaining to nature and quality of services and equipment and provided a fee schedule which included a clause stating that any price increases made for each successive year of the duration of the franchise would be based upon the consumer price index for the preceding year. There were also clauses providing that the agreement could be terminated by either party prior to the end of the specified five-year term or "for a violation of the terms thereof," upon ninety days' notice; and also that upon termination the county would purchase the ambulances and other equipment.

In August 1982, slightly more than one year into the five-year

span of the franchise, the Gwinnett County Hospital Authority, with the approval of the county's Board of Commissioners, arranged to buy out the remaining term of Pounds'/Gwinnett Ambulance's franchise with respect to primary transport (as defined, supra) but to give him the exclusive right to provide secondary transport. It was understood by all the parties that such transport would be provided (and billed for) by Metro Ambulance Services, a corporation wholly owned by Pounds. Relevant portions of the latter agreement were as follows:

"11. Miscellaneous.

"(a) Time is of the essence of this contract.

. . .

"(k) *Agreement Not to Compete.* During the term of this agreement, and for a period of ten (10) years thereafter, Seller shall not, except with the written consent of Purchaser, engage in any business the same as or similar to the business covered by this Agreement within the boundaries of Gwinnett County, Georgia. More specifically, Seller shall not engage in, either directly or indirectly in any manner, financing, consulting, advising or participating in any business, association, partnership, sole proprietorship, or corporation which performs any of the services the same as or similar to the business covered by this Agreement, including but not limited to convalescent transport for the elderly, within the boundaries of Gwinnett County, Georgia, for the period specified above.

"The business covered by this agreement is an emergency ambulance service. The service provides for the emergency transport of the aged, infirmed [*sic*] and injured.

. . .

"(m) *Secondary Transport.*

"Seller [Pounds] shall have exclusive rights of 'secondary transport' for the Purchaser [the Authority]. 'Secondary transport' means transportation of patients requiring the use of a helicopter or a mobile intensive care unit.

"Seller agrees to provide this secondary transport at a discounted cost to Purchaser of twenty percent (20%) less than the current price charged by Seller for these services. The annual increase in this price paid by Purchaser to Seller for secondary transport shall not exceed the percentage increase in the Consumer Price Index for the previous year.

"Upon the invitation of the Purchaser, Seller also agrees to provide secondary ground assistance in emergency situations beyond the capacity of the Purchaser." Although the first of the provi-

sions under "Miscellaneous," supra, states that "[t]ime is of the essence of this contract," nowhere in the agreement itself is its duration specified. The sole references to specific time periods are the 10-year covenant not to compete; the phrase regarding "annual increase" and "the previous year" in subsection 11. (m), supra; and a guarantee (subsection 6 (g)) that the seller will buy back the assets for a specified price, "at the end of one year upon the written request of the purchaser."

During the first year under the agreement, Pounds, through Metro, provided secondary transport by means of two helicopters which he had purchased and also by means of a specially equipped ground unit; additionally, as provided in the agreement, he furnished primary transport (through Metro) when called upon to do so. Through Metro, Pounds sent to the Authority bills showing 100 percent of the cost of each service, and the Authority deducted 20 percent of the cost as billed and remitted the remaining 80 percent. At the end of that year the Authority informed Pounds that it was terminating his exclusive franchise for secondary transport and that, for such calls as might be referred to him, he would have to bill the patients directly. (The record is unclear as to how this actually worked out; e.g., the Authority alleges that Pounds did not continue to offer the 20 percent discount, but Pounds counters that the billing was consistently done in the same manner, and that it was the Authority which, on its own initiative and without prior notice, at the end of the first year ceased to deduct 20 percent but remitted 100 percent of the amount billed to it.)

In January 1987 Pounds, both individually and as Gwinnett Ambulance Service, Inc., filed a complaint against the Authority, seeking a declaratory judgment and damages. He alleged that the ten-year covenant not to compete violated Art. III, Sec. VI, Par. V (c) of the Georgia Constitution and that the Authority had breached the contract by honoring the exclusive franchise for secondary transport for only one year. He subsequently contended that the secondary transport franchise was coterminous with the covenant not to compete or, alternatively, was, like the 1981 contract, of five years' duration. The Authority answered, alleging *inter alia* that Pounds had breached the contract by (a) assigning the franchise to Metro without the Authority's written permission and by (b) failing to provide the agreed-upon 20 percent discount on secondary transport; the Authority further alleged that Pounds' (i.e., Metro's) response times had not been completely satisfactory on either primary or secondary transport calls.

In April 1988 the Authority moved for summary judgment, alleging (1) that Metro, not Pounds or Gwinnett Ambulance Service, was the proper plaintiff and that Metro, not being a party to the agreement, had no enforceable rights and therefore lacked standing to sue;

(2) that the maximum possible term for the duration of the secondary transport franchise was the term of the original franchise, or 3-½ years from the date of execution of the purchase/sell agreement; (3) that when a contract does not specify a time limit for performance, the law implies a reasonable time, and that if a seeming ambiguity exists concerning time of performance (or any other essential term of the contract), it is the duty of the trial court to determine the existence of the ambiguity *vel non* and to apply the rules of construction. The Authority further alleged that the covenant not to compete was reasonable and therefore enforceable.

In opposing the motion Pounds urged that the issue of the constitutionality of the covenant not to compete be reserved until the hearing. He argued that there had been no assignment of the franchise because the Authority had known from the inception of the agreement that service would actually be provided by Metro and that Pounds was Metro's sole owner. He further contended that the Authority's knowledge concerning Metro and its acceptance of Metro's services amounted to a waiver of the alleged breach. The motion was denied.

The record reveals that the trial court closely questioned witnesses and counsel for both parties as to the language of the contract and the intent underlying the various provisions, and expressed some surprise at learning that an attorney — specifically, counsel for the Authority — had drafted the agreement. Conflicting testimony was offered regarding the original understanding as to the duration of the agreement and also regarding response times in answering calls for secondary and primary transport. After making findings of fact and conclusions of law, the court entered an order holding (1) that plaintiff had not met his burden of proof in establishing a time of performance for the agreement's secondary transport provision; (2) that because neither party had established a time frame for performance, the secondary transport provision was terminable at will and the Authority had therefore acted properly in terminating it; (3) that Pounds had breached the contract by failing to provide consistently fast emergency transport during the first year of the agreement. Pounds appeals, alleging that the trial court erred in failing to construe the contract so as to find a reasonable term for the secondary transport provision of the contract, and in finding that Pounds' performance was untimely. *Held*:

1. We first address appellant's second enumeration of error. According to the record, Pounds' (or Gwinnett Ambulance's) duty under the 1982 contract was to provide *secondary* transport on a regular basis, and to provide *primary* transport only when the Authority called upon him to do so. Although a representative of the Authority offered testimony that Pounds' performance was "unsatisfactory" and

not always timely (allegations which Pounds denied), no written records or other competent primary evidence to substantiate this testimony was adduced at the hearing. Moreover, Pounds testified without contradiction that after the first year of the contract had passed, the Authority had called upon Metro (i.e., Gwinnett Ambulance) for secondary transport only twice, and primary transport on only a few occasions. Since the agreement by its terms imposed upon Pounds (or Gwinnett Ambulance) a duty to provide secondary rather than primary transport on a regular basis, and since the evidence was undisputed that Pounds was requested to provide secondary transport on only two occasions after the first year, the alleged deficiencies in performance would hardly seem, from the standpoint of statistical validity, to have a solid basis in fact — and therefore would not rise to the level of sufficiency to carry the appropriate evidentiary burden, absent documentation or other corroborative evidence. As it is the prerogative of the appellate court to determine the sufficiency of evidence adduced at trial, we find that the trial court erred in holding that Gwinnett Ambulance's performance was so deficient as to constitute a "violation of the agreement."

2. When a written contract or agreement appears to be incomplete, or its terms inconsistent with one another, it is the duty of the trial court to construe that contract or agreement, OCGA § 13-2-1, applying the rules of construction set forth in OCGA § 13-2-2. Where the writing is incomplete on its face, parol evidence is admissible to assist in determining the parties' intent. *Preferred Risk Mut. Ins. Co. v. Jones*, 233 Ga. 423 (211 SE2d 720) (1975); *Thomas v. Clark*, 178 Ga. App. 823 (344 SE2d 754) (1986). In construing a contract, the court must look to the four corners of the instrument. *McCann v. Glynn Lumber Co.*, 199 Ga. 669 (34 SE2d 839) (1945); *Brooke v. Phillips Petroleum Corp.*, 113 Ga. App. 742 (149 SE2d 511) (1966). When, after application of the rules of construction, there appears to be an ambiguity, it must be resolved by the finder of fact against the draftsman: in the instant case, the Authority. OCGA § 13-2-2 (5); *Hill v. John P. King Mfg. Co.*, 79 Ga. 105 (3 SE 445) (1887). The contract *sub judice* specifies that time is of the essence but states no time period for its duration.

After close scrutiny of the entire record, and especially of the contracts/agreements and the trial transcript, we are persuaded that the reasonably prudent person would regard the agreement at issue not as a terminable-at-will agreement (despite the possible import of the inclusion of a for-cause termination clause), but rather as a multi-year contract the duration of which would be coterminous either with the 1981 five-year franchise bought out by the Authority, or possibly with the ten-year (actually, ten years plus the unspecified term of the franchise agreement) covenant not to compete contained in the agree-

ment at issue here; or which, alternatively, might be construed as having an independent five-year duration analogous with that of the franchise purchased by the Authority in 1982. The language cited, supra, which alludes to "ten years," "annual increase," etc., would make no sense and would therefore be rendered mere surplusage if it were interpreted otherwise. The law does not favor such a construction. See *Board of Regents v. A. B. & E., Inc.*, 182 Ga. App. 671 (357 SE2d 100) (1987).

Moreover, Pounds testified without contradiction that a part of the consideration for his entering into the ten-year covenant not to compete, and thereby surrendering his exclusive right to provide primary transport for that period of time, was his understanding that during that same ten-year (or ten-year plus) period, as a *quid pro quo*, he would have the exclusive right to provide secondary transport. This testimony was not rebutted but was corroborated by the testimony of others. Moreover, nothing in the minutes of the Gwinnett County Commissioners, as proffered in evidence, is inconsistent with this characterization of the intent underlying the agreement.

We agree with appellant that it was the duty of the trial court to construe the contract, not the duty of the plaintiff (who had not drafted the contract) to "prove" the existence and nature of the missing term. See OCGA § 13-2-2; *Western Contracting Corp. v. State Hwy. Dept.*, 125 Ga. App. 376 (187 SE2d 690) (1972). The rule is that a contract (or segment thereof) involving a possible ambiguity must first be construed by the court, applying the rules of construction set forth in OCGA § 13-2-2. See also OCGA § 13-2-1.

We do not favor judgment by abdication. We therefore remand this case to the trial court for determination of the duration of the contract (3-½ years, 5 years, 10 years, or another term), in accordance with the considerations delineated, supra.

*Judgment reversed; case remanded for proceedings consistent with the above. Birdsong and Benham, JJ., concur.*

DECIDED APRIL 19, 1989 —
REHEARING DENIED MAY 26, 1989 —

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes*, for appellants.

*Webb, Fowler & Turner, Anthony O. L. Powell*, for appellee.