## A96A1622, A96A1623. ROHM & HAAS COMPANY
## v. GAINESVILLE PAINT & SUPPLY COMPANY et al.;
and vice versa.

(483 SE2d 888)

BLACKBURN, Judge.

Rohm & Haas Company (R & H) brought the underlying action to collect on guaranties whereby Gainesville Paint & Supply Company (GPS), through its owner James Peters, guaranteed certain debts which were owed to R & H by Shield Industries.[1] Shield Industries filed bankruptcy before satisfying its R & H account. R & H's complaint also alleged fraud and RICO violations.

The action was filed originally in the Superior Court of Paulding County and was later transferred to Hall County for proper venue. The only Paulding County resident was then dismissed by R & H. The Hall County Superior Court granted partial summary judgment to the defendants, GPS and Peters, and denied summary judgment to R & H.

In Case No. A96A1622, R & H appeals the trial courts' rulings on venue and on the parties' cross-motions for summary judgment. In Case No. A96A1623, GPS and Peters cross-appeal the Paulding County Superior Court's order declining to exercise jurisdiction to award attorney fees on their motion to transfer venue.

### Case No. A96A1622

1. In several enumerations of error, R & H contends the Paulding County Superior Court erred in transferring venue and in denying its motion for summary judgment. On November 9, 1994, the Paulding County Superior Court entered its order on defendants' motion to transfer venue finding that venue was proper as to defendant Annette Sims, but that venue was not proper as to the remaining defendants because the complaint did not allege actions against the defendants as joint tortfeasors. Thereafter, on December 12, 1994, R & H voluntarily dismissed Sims from the action. Sims was the only defendant residing in Paulding County. As no defendant presently in the case resides in Paulding County, jurisdiction could not be proper in Paulding County. Therefore, the questions presented by these enumerations of error have become moot and will not be addressed. See OCGA § 5-6-48 (b) (3); *Bond v. Parten*, 206 Ga. App. 88, 89 (424 SE2d 353) (1992). Hall County properly exercised jurisdiction over

---

[1] Shield Industries was owned by defendants James Parson and Peters. Peters owned less than one-half of Shield's stock, and Parson operated the company. GPS was wholly owned by Peters.

Defendant Parson failed to answer the complaint and is not involved in this appeal.

this matter.

2. Upon the transfer of venue to Hall County, GPS and Peters refiled their motion for summary judgment. In several enumerations, R & H contends the Hall County Superior Court erred in granting partial summary judgment to GPS and Peters.

On May 26, 1987, GPS, through Peters, executed a guaranty of payment to R & H, a supplier for Shield Industries, guaranteeing $30,000 worth of goods sold to Shield. On May 24, 1989, GPS, through Peters, executed a $50,000 guaranty to R & H, and on September 5, 1989, a $100,000 guaranty was executed on GPS' behalf benefitting R & H. By its complaint, R & H demanded payment of $91,788 plus interest, attorney fees, and penalties pursuant to OCGA § 10-7-30.

(a) R & H contends that the trial court erred in determining that the $100,000 guaranty was barred by the Equal Dignity Rule. We cannot agree.

The Equal Dignity Rule is codified at OCGA § 10-6-2 and pertinently provides that "[w]here the exercise or performance of an agency is by written instrument, the agency shall also be created by written instrument. . . . A corporation may create an agent in its usual mode of transacting business and without its corporate seal." The "legislature excepted the creation of corporate agents from the 'equal dignity' rule and . . . permitted corporations to create such agents in their usual mode of transacting business — i.e. shareholder action in the adoption of charters, by-laws, resolutions and similar conduct vesting corporate agents with authority to act." (Footnote omitted.) *Whiteway Neon-Ad v. Opportunities Indus. &c.*, 243 Ga. 114, 115 (252 SE2d 604) (1979). The acts of corporate agents are valid if such agents were appointed by someone with the "power or authority to make the appointment." (Citation and punctuation omitted.) Id. at 116.

The $100,000 guaranty is signed with Peters' name, as the president of GPS. However, it is undisputed that Peters did not actually sign the $100,000 guaranty. Annette Sims deposed that she signed Peters' name to the guaranty after Peters directed her to do so during a telephone conversation. Peters denies directing Sims to sign his name to the guaranty. It is further undisputed that Sims worked for Shield Industries and did not work for GPS or Peters. The only evidence that Sims was ever an agent of GPS is her own testimony that Peters instructed her to sign his name. The record contains no evidence regarding Peters' authority to verbally appoint agents to bind GPS. Furthermore, the evidence in the record establishes that it was not GPS' practice or normal course of business to verbally authorize non-employees to sign for its principals.

In light of Peters' affidavit, under *Lau's Corp. v. Haskins*, 261 Ga.

491 (405 SE2d 474) (1991), R & H has the burden of presenting evidence that Sims was appointed GPS' agent in GPS' usual mode of transacting business. R & H did not satisfy this burden, and the trial court did not err in granting defendants' motion for summary judgment on this issue.

The *Whiteway Neon-Ad* case supports this position as it was therein determined that the Equal Dignity Rule applies to corporations but that where corporate formalities are observed, the corporation's agents have authority to execute documents required to be in writing without showing written authority. Also, *Johnston v. Crawley*, 15 Ga. 316 (1858), cited in *Whiteway Neon-Ad* indicates that if the agent is appointed by someone with the "power or authority to make the appointment, there can be no question of its validity." *Whiteway Neon-Ad*, supra at 116. In the present case, because Sims was not even an employee of GPS and there is no evidence regarding Peters' authority to appoint agents (for instance the by-laws could require such agents to be appointed by a vote of the directors), the Equal Dignity Rule requires her authority to be in writing. Therefore, under the facts presented, the Equal Dignity Rule would preclude the enforcement of the $100,000 guaranty.

(b) R & H asserts that the trial court erred in determining that the guaranties were not cumulative. Our review of the contract language indicates that it is ambiguous, and the evidence indicates that the parties intended that the guaranties were not cumulative.

The guaranties at issue contain identical language with the exception of the amount, to wit: "Guarantor's obligation to guarantee payment for goods sold to, and interest incurred by, Purchaser is limited to an amount not in excess of $____." The guaranties further provide that: "This Guaranty is independent[2] of any other [guaranties] given for the account of Purchaser."[3]

"The cardinal rule of contract construction is to ascertain the intention of the parties. OCGA § 13-2-3. Contract construction is a three-step process. Initially, the construction of the contract is a question of law for the court. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms

---

[2] "Independent" is defined as "(b) (1): not requiring or relying on something else (as for existence, operation, efficiency): not contingent: not conditioned. . . . (2): being or acting free of the influence of something else." Webster's Third New International Dictionary, 1148 (1966).

[3] We note that the guaranties also contain a choice of law provision requiring that Pennsylvania law govern. Neither party asserted this provision, and, in fact, both parties presented Georgia law to the court below and to this Court. Therefore, the choice of law provision has been modified by the parties' mutual departure from the contract terms. See OCGA § 13-4-4.

of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if ambiguity does appear, the existence or nonexistence of an ambiguity is itself a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction. This is true even if the contract is difficult to construe. Further, a contract should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof." (Citations and punctuation omitted.) *Richard Haney Ford v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315, 316 (1) (b) (461 SE2d 282) (1995).

We must construe the present guaranties strictly in the interest of the surety. See OCGA § 10-7-3. In the present case, the absolute limit of liability for payment of goods sold in each guaranty creates an ambiguity as to whether they are cumulative. Furthermore it is clear from the evidence that the parties did not intend for the guaranties to be cumulative. Sue Hilburn, regional credit manager for R & H, deposed that at the time the $50,000 guaranty was signed, it was the parties' intention that it replace the $30,000 guaranty. Additionally, Peters averred that when he signed the $50,000 guaranty, he intended that it replace the $30,000 guaranty. Therefore, in light of the ambiguous contract language and the clear evidence of the parties' intentions, we find that the trial court correctly determined that the guaranties were not cumulative.

3. R & H contends that the trial court erred in denying its motion for summary judgment through which it sought to enforce the $30,000 and the $50,000 guaranties. The trial court determined that a jury issue remained as to whether sufficient consideration was given for the guaranties. As we have previously determined that the $50,000 guaranty replaced the $30,000 guaranty, our analysis concerns only the $50,000 guaranty.

The guaranty itself contains recitals of consideration and further provides: "In order to induce the Seller to extend credit privileges on open account terms to the Purchaser, the Guarantor, intending to be legally bound hereby agrees as follows." Furthermore, after the $30,000 and the $50,000 guaranties were signed, R & H sent letters to GPS stating: "In a few days under separate cover, as consideration and in appreciation, we shall send you one dollar embedded in Plexiglas. It is a privilege to be a supplier of Shield Industries, Inc., made possible by your [guaranty], and we shall strive to assure our best service!"

"The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit . . . given to his

principal." OCGA § 10-7-1. In the present case, it is undisputed that credit was extended to Shield Industries and that additional credit was extended after the $50,000 guaranty was signed. See *First Union Nat. Bank &c. v. Gurley*, 208 Ga. App. 647, 650 (431 SE2d 379) (1993); *Virgil v. Kapplin*, 187 Ga. App. 206, 208 (369 SE2d 808) (1988). It is irrelevant that Shield Industries' debt with GPS was not fully secured by the $50,000 guaranty if the consideration for the $50,000 was that additional credit would be issued. Therefore, the trial court erred in failing to grant R & H's motion for summary judgment on the enforceability of the $50,000 guaranty.

4. By two enumerations of error, R & H contends that the trial court erred in denying its motion for summary judgment on the issue of attorney fees and interest. The guaranties clearly obligate GPS to pay attorney fees and interest, and such payment is authorized by OCGA § 13-1-11, where proper notice is given. We have previously determined that notice in the plaintiff's complaint that such amounts are sought is sufficient to invoke OCGA § 13-1-11. See *Shier v. Price*, 152 Ga. App. 593, 595 (263 SE2d 466) (1979). As R & H gave notice in its amended complaint, we find that attorney fees and interest are authorized. Although, the guaranties limit GPS' liability with respect to payment for goods and interest,[4] the wording of the guaranties does not similarly limit the amount paid for attorney fees. Therefore, the trial court erred in denying R & H's motion with regard to attorney fees, but not with regard to interest.

5. By two enumerations of error, R & H contends that the trial court erred in determining that Peters and GPS did not commit fraud or violate the Georgia RICO statute.

(a) "To avoid summary judgment, [R & H] had to present evidence of the elements of its fraud claim: a false representation by [GPS or Peters], scienter, an intention to induce [R & H] to act in reliance, justifiable reliance and damages." *Riviera Finance v. McBride*, 221 Ga. App. 321, 322 (471 SE2d 233) (1996). We agree with the trial court that R & H failed to present evidence of a false representation of GPS or Peters upon which it relied. Although R & H asserts that Peters made "[a]n intentional statement to Annette Sims and others to sign his name to the [$100,000] Guaranty," this is not the type of representation covered by fraud. See generally OCGA §§ 51-6-1 and 51-6-2. Either the statement was made or it was not made, but it was not a false representation upon which R & H relied.

(b) "A private cause of action is created in favor of persons injured by violations of OCGA § 16-14-4, by the language of OCGA

---

[4] *Tench v. U. S. Tsubaki*, 191 Ga. App. 248 (381 SE2d 319) (1989), cited by R & H, does not apply to the present case, as the guaranty in *Tench* did not contain an absolute limit of liability for goods sold to and interest by the purchaser.

§ 16-14-6 (c). The relevant portion of OCGA § 16-14-4 reads as follows: '(a) It is unlawful for any person, *through a pattern of racketeering activity* or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property of any nature including money. (Emphasis added.)'

"Thus, the conduct prohibited by the act is the acquisition of (in this case) money through a 'pattern of racketeering activity.' The act further provides that 'pattern' means engaging in at least two incidents of racketeering activity. OCGA § 16-14-3 (2). Finally, 'racketeering activity' is defined to mean the commission of a crime in any of thirty-one specified categories of offenses (known as predicate offenses). OCGA § 16-14-3 (3)." *State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (372 SE2d 276) (1988).

After our de novo review of the record, we agree with the trial court that no evidence of Georgia RICO violations was produced by R & H. Therefore, the trial court's grant of GPS' motion for summary judgment on R & H's claims for fraud and Georgia RICO violations was not erroneous.

### Case No. A96A1623

6. GPS and Peters contend that the Paulding County Superior Court erred by determining it did not have jurisdiction to rule on their motion for attorney fees associated with their motion to change venue.

GPS and Peters actually filed their motion for attorney fees twice. Originally, they filed it along with their motion to transfer venue to Hall County. The trial court granted the motion to transfer venue, but did not rule on the motion for attorney fees. We have previously determined that such a nonaction with respect to a motion properly before the trial court amounts to a denial thereof. See *Hewett v. Carter*, 215 Ga. App. 429, 430 (450 SE2d 843) (1994); *Coffee Butler Svc. v. Sacha*, 208 Ga. App. 4, 6 (430 SE2d 149) (1993). After the case was transferred to Hall County, GPS and Peters refiled their motion for attorney fees in Paulding County. As the trial court had already implicitly denied the motion and the case had been transferred to Hall County, the Paulding County court did not err in determining it lacked jurisdiction to review the refiled motion.

*Judgment affirmed in Case No. A96A1623. Judgment affirmed in part and reversed in part in Case No. A96A1622. Birdsong, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 28, 1997 —
RECONSIDERATION DENIED MARCH 13, 1997.

*John T. Longino*, for appellant.
*Hicks, Maloof & Campbell, John P. Hutchins, James D. Dantzler, Jr.*, for appellees.