A97A1490. POWELL et al. v. NORMAN ELECTRIC GALAXY, INC. et al.
(493 SE2d 205)

BEASLEY, Judge.

This appeal arises from a suit between neighboring landowners over the issue of whether a billboard lease is a renewal, extension, or novation. The Powells seek removal of the billboard, trespass damages, and damage to their asphalt parking lot caused by Pabian Outdoor Advertising's equipment when replacing the billboard.

Although plaintiffs seek injunctive relief, this Court has jurisdiction, according to the Supreme Court's construction of Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2). *Saxton v. Coastal Dialysis &c.*, 267 Ga. 177 (476 SE2d 587) (1996). Compare *Crystal Blue Granite Quarries v. McLanahan*, 261 Ga. 267 (404 SE2d 266) (1991), which also involved judicial construction of a business lease and a prayer for equitable relief but preceded *Saxton* as well as *Saxton*'s predecessors *Pittman v. Harbin Clinic Professional Assn.*, 263 Ga. 66 (428 SE2d

328) (1993), and *Beauchamp v. Knight*, 261 Ga. 608 (409 SE2d 208) (1991). On the understanding that this Court has jurisdiction of this case, we move to the issues.

1. The billboard, leased by defendant Norman Electric Galaxy, Inc. to defendant Pabian Outdoor Advertising, Inc., perches atop a pole on Norman's property and overhangs property owned by plaintiffs John and Eva Powell. Thus it occupies a portion of their airspace. See OCGA § 44-1-2 (b). Although the Powells acknowledge that Norman and Pabian originally had a leasehold right to maintain the overhanging billboard based on a ground lease to which the Powell deed was subject, they claim that right terminated when Norman and Pabian executed a new lease with new terms. The owner of the soil beneath an overhanging structure may be entitled to ejectment or an action for trespass. *Thrasher v. City of Atlanta*, 178 Ga. 514, 529 (173 SE 817) (1934).

On cross-motions for summary judgment, the trial court ruled in favor of Norman and Pabian and dismissed the complaint. Because the new lease contains different terms, it is a novation, the right to occupy the airspace above Powells' property expired, and the Powells are entitled to summary judgment as to the liability of Pabian.

The relationship of the parties as it relates to this airspace is as follows. Before the Powells and Norman owned their adjoining properties, Mark Investment Company owned both properties as one tract. In 1988, Mark conveyed a ground lease to Pabian for a billboard.[1] This original lease between Mark and Pabian provided that, for an annual rental of $4,200, Pabian could "construct[ ], operat[e], and maintain[ ]" the billboard for a five-year term from "Jan. 1987" to "Jan. 1992." It gave Pabian a right of "ingress and egress over [Mark's] premises" for the purpose of maintaining, removing, or replacing the advertising display. According to its terms, unless Pabian or Mark gave 90 days' written notice at the end of the five-year term, the lease automatically extended for another five-year term. If neither party gave notice at the end of this second period, the lease would repeatedly extend for one-year terms until a party gave the required 90 days' notice.

The lease and the parties speak of "renewal," but extension is actually what was provided for. "A stipulation intended merely to lengthen the time upon terms and conditions stated in the lease is an extension." *Crystal Blue*, supra at 267 (1) (lease provided for extension, not renewal). An extension does not contemplate a new agreement.

In May 1990, Mark sold to Norman that portion of the property

---

[1] The exact address of this property is unclear from the record.

on which the pole and part of the sign were located and assigned to Norman "all the rights and privileges" of the Pabian lease. In April 1991, Mark sold the rest of its property to the Powells. The Powells concede that their deed, although silent as to the lease and the encroachment, is subject to the lease because a recorded plat referred to in their deed showed the billboard overhanging their property.

The five-year term of the original ground lease expired in January 1992. Although there is no evidence in the record that Pabian or Norman gave notice to prevent an automatic five-year renewal, they executed a new lease on January 17, 1992. The printed form is identical to the original lease and is for a term of five years beginning January 1, 1992. But this lease provided for an annual rental of $5,400 in quarterly installments of $1,350 instead of a single annual payment of $4,200 due at the beginning of the year. This lease, like the original one, also provided for one five-year automatic extension and yearly extensions after that, absent a party's 90 days' notice. Under the original lease, the automatic renewals would have become year-to-year in 2002, not 2007 as set up in the new lease.

In late 1991 or early 1992, Pabian began planning to remove the billboard and to replace it with a smaller sign. Pabian and Norman claim Mr. Powell granted Pabian permission to use his parking lot for this purpose but unreasonably revoked his permission in March 1992, as Pabian was beginning to erect the smaller sign. Powell claims he revoked his permission because Pabian reneged on its promise to pay him for the use of the parking lot. The Powells also claim Pabian's equipment caused $600 damage to their asphalt.

Pursuant to the original ground lease assignment, Norman received only the rights Mark retained in the lease to Pabian. If the original lease expired or terminated, so did Norman's right to lease the airspace over the Powells' property. Norman and Pabian claim that because the January 1992 lease document merely represents a "renewal" as provided by the original lease to which the Powells' property rights are subject, Norman's right to lease the airspace to Pabian did not expire but continued.

The January 1992 lease represented a novation extinguishing the original lease. "An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject matter embraced by the original contract. *Hennessy v. Woodruff*, 210 Ga. 742, 744 (82 SE2d 859) (1954)." *Chewning v. Huebner*, 142 Ga. App. 112, 113 (235 SE2d 573) (1977). See also *Knight v. First Fed. &c.*, 151 Ga. App. 447, 454 (3) (260 SE2d 511) (1979) (new promissory note, with amount owed, interest rate, and date of maturity different from original note, constituted novation rather than renewal of original note). Although Norman and Pabian contend they merely intended this lease to rep-

resent a continuation or renewal of the original agreement, material terms differ. And " 'where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intent of the parties.' " *Rohm & Haas Co. v. Gainesville Paint &c. Co.*, 225 Ga. App. 441, 443-444 (2) (b) (483 SE2d 888) (1997). The very fact that a new lease was executed shows that a substitution ending the old lease was intended, for if the parties had intended the first lease to continue, no action on their part was necessary. Automatic extension (not "renewal") was expressly provided for.

The documents show the "four essential requisites of a novation: (1) a previous valid obligation, (2) the agreement of the parties to a new contract, (3) a mutual intention by the parties to substitute the new contract for the old one, and (4) the validity of the new contract." *Ga. Income Property Corp. v. Murphy*, 182 Ga. App. 101, 103 (1) (354 SE2d 859) (1987).

Thus, paradoxically, by agreeing to the new lease Norman and Pabian extinguished the old and thereby extinguished the correlative rights to lease and to occupy the airspace above the Powells' property. To the extent the lease purports to grant Pabian the right to occupy any area over the Powells' property, the lease might be subject to the defense of partial failure of consideration; however, it remains a valid contract. See *Speir v. Nicholson*, 202 Ga. App. 405, 408 (2) (414 SE2d 533) (1992) (partial failure of consideration creates a claim for breach of contract).

The Powells were entitled to summary judgment on the issue of trespass in that Pabian acquired no right to the airspace under the new lease and Norman had no such right to convey.

2. Genuine issues of material fact exist as to damages, including the Powells' claim that Pabian injured the asphalt in its parking lot. In their motions for summary judgment, neither defendant made any mention of this claim and presented no evidence piercing an essential element. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The trial court erred by granting summary judgment to defendants on an issue not raised by their motions. See *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995). Plaintiffs' motion, which sought judgment only as to liability and not on the issue of damages, properly leaves the latter for jury resolution.

*Judgment reversed with direction. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 15, 1997 —
RECONSIDERATIONS DENIED NOVEMBER 3, 1997 —

*William R. McCracken*, for appellants.

*Jolles & Slaby, Isaac S. Jolles, Lambert & Roffman, Allan R. Roffman, Marvin J. Reitman, Jr.*, for appellees.