A99A1581. BRANNEN/GODDARD COMPANY v. SHEFFIELD, INC.
(524 SE2d 534)

SMITH, Judge.

Brannen/Goddard Company, a commercial real estate firm, brought suit against Sheffield, Inc., the owner of Buckhead Centre, to recover commissions it alleged were owed for space leased to Advance Security. Sheffield answered and denied liability, and cross-motions for summary judgment were filed. The trial court granted Sheffield's

motion and denied that of Brannen/Goddard, and Brannen/Goddard appeals.

The dispute centers on the construction of two documents: the original lease executed by Advance Security and the building's then owner, Julian LeCraw & Company, in 1985, and a letter agreement creating the continuing obligation to pay commissions to Brannen/Goddard. We conclude that the trial court correctly found that a lease executed by Advance Security on November 1, 1990, was a new lease, rather than an extension of the original lease; that the letter agreement providing for Brannen/Goddard's commissions was unambiguous; and that it did not provide for a commission to be paid for a new lease. We therefore affirm the trial court's grant of summary judgment to Sheffield.

The record shows that the original lease, which was procured by Brannen/Goddard, was executed on April 10, 1985. Its term was from July 1, 1985 to November 30, 1992, and special stipulation 1 of the lease provides that "tenant shall have the right to extend the term of this lease for the premises by providing landlord with a 180-day prior written notice. The rental rate for the 3 or 5 year option period will be the then-current market for the building."

On May 3, 1985, LeCraw agreed by letter to pay commissions to Brannen/Goddard on Advance Security's lease. The agreement provided that LeCraw would pay

> an amount equal to the first month's rent ($10,003.58) . . . immediately to Brannen Goddard Real Estate upon occupancy by the tenant. Thereafter, five percent (5%) of the rental income received from the tenant will be paid to Brannen Goddard throughout the lease term. In addition, Brannen Goddard will receive five percent (5%) of all lease extensions and expansions executed by Advance Security at Buckhead Centre.

Several amendments to the lease were executed subsequently. In December 1989, Sheffield purchased the building from LeCraw's successor. Under the terms of the purchase agreement, the purchaser executed an agreement assuming the seller's obligations under the leases, including all leasing commissions. Thereafter, Sheffield began paying Brannen/Goddard monthly commissions due under the original lease.

In July 1990, after appointing Coldwell Banker Commercial Real Estate Services as its exclusive agent, Advance Security negotiated a new lease with Sheffield. The new lease was executed on November 1, 1990. It covered more and different space in the building and included a significantly reduced rental rate. Because the new lease

began approximately two years before the original lease was due to expire, Sheffield continued to make commission payments to Brannen/Goddard through October 1992. It made no payments to Brannen/Goddard under the new lease.

Brannen/Goddard contends the trial court erred in concluding that Sheffield was not required to pay it commissions under the new lease. Its primary contention is that the new lease was merely a "renewal" of the old lease and that the letter agreement obligating payment of commissions to Brannen/Goddard required payment of commissions for "renewals." We do not agree with either contention.

First, nowhere does the letter agreement obligate Sheffield or its predecessor, LeCraw, to pay commissions to Brannen/Goddard for lease "renewals." It is true that the terms "renewal," "new lease," and "extension" are sometimes used interchangeably and often confused. The terms have engendered much litigation. See, e.g., *Cumberland Center Assoc. v. Southeast Mgmt. &c. Corp.*, 228 Ga. App. 571, 576-579 (492 SE2d 546) (1997), overruled on other grounds, *Atlanta Market &c. Co. v. McLane*, 269 Ga. 604, 610 (503 SE2d 278) (1998); *Chalkley v. Ward*, 119 Ga. App. 227 (166 SE2d 748) (1969); *Candler v. Smyth*, 168 Ga. 276 (147 SE 552) (1929). But, a "stipulation intended merely to lengthen the time upon terms and conditions stated in the lease is an extension. [Cit.]" *Crystal Blue Granite Quarries v. McLanahan*, 261 Ga. 267 (1) (404 SE2d 266) (1991). See also *Powell v. Norman Elec. Galaxy*, 229 Ga. App. 99, 100 (1) (493 SE2d 205) (1997). The letter agreement here contemplates the payment of commissions beyond the original lease term only on "extensions and expansions." We agree with the trial court that this phrase is not ambiguous and parol evidence may not be considered to construe it.

But even if the letter agreement authorized the payment of commissions on "renewals," and a renewal, as distinguished from an extension, has been held to require the execution of a new lease, *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.*, 182 Ga. App. 671, 674 (357 SE2d 100) (1987), not all new leases are renewals.

> In deciding whether a succeeding lease is substantially a renewal of a preceding lease or altogether a new lease, the determination can be based on whether the succeeding lease employs drastically different terms, not simply somewhat different considerations, i.e., is the lessee occupying substantially the same space under substantially the same terms? If the succeeding lease employs substantially the same terms as the preceding lease, it may be considered a renewal even though technically a "new" lease. [Cit.]

Id.

In this case, the original lease gave Advance Security an option

only to "extend [its] term." What was contemplated was clearly an extension of the lease, on the same terms.[1] Even if the new lease is considered a "renewal," therefore, reading the original lease and the letter agreement together, Sheffield would have been obligated to pay Brannen/Goddard commissions if Advance Security had executed a renewal extending the term of the original lease or simply expanded its scope by including additional space under the same terms as the original lease.

It is undisputed that Advance Security did not do so. It hired a new representative and negotiated an entirely different lease. The new lease covered both additional and different space and included terms "drastically different" from those in the original lease. The new document was not a "renewal" of the old lease; it was simply a new and different lease. Compare *Cumberland Center Assoc.*, supra at 578 (examination of both leases reveals tenant occupying same space under substantially same material terms). The new lease could not have been a renewal of the original lease because the term of the old lease had not expired when the new lease was executed. Because the new lease contained material terms different from those in the original lease, it constituted a novation; when it was executed, it extinguished the original lease. "An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject matter embraced by the original contract." (Citations and punctuation omitted.) *Powell*, supra at 101. It is clear that the parties intended for the new, and different, lease to substitute for the old, original lease. In doing so, they could not impair Brannen/Goddard's existing right to commissions under the old lease, and Sheffield acknowledged this by continuing to pay the required commissions until the expiration of the term of the original lease. The trial court correctly concluded that the new lease was neither a renewal nor an extension and no right to commissions existed beyond that term.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 3, 1999 — ▮▮▮▮▮▮▮

*Harman, Owen, Saunders & Sweeney, Perry A. Phillips*, for appellant.

---

[1] We note that although special stipulation 1 is captioned "Renewal Option," paragraph 41 of the lease provides expressly that "[t]he captions, headings and subheadings set forth in this lease agreement are for convenience of reference only, and shall not be used in interpreting this agreement."

*Gambrell & Stolz, Robert G. Brazier, Christopher R. Stovall, Seaton D. Purdom,* for appellee.