**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 12, 2023**

# In the Court of Appeals of Georgia

A23A1438. BUDD v. THE LAMAR COMPANY, LLC.

BROWN, Judge.

In this case involving a billboard lease, Roger Budd appeals from the trial court's order granting The Lamar Company, LLC's ("Lamar") motion for summary judgment and denying Budd's motion for summary judgment in his favor. Budd contends that the trial court erred by concluding that a 2006 lease survived a 2017 foreclosure of the property. For the reasons explained below, we reverse.

It is well established that we review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant. *Nebo Ventures v. NovaPro Risk Solutions*, 324 Ga. App. 836 (752 SE2d 18) (2013). A party may obtain summary judgment when "no genuine issue of material fact remains and that . . . party [is] entitled to judgment as a matter of law." (Citation and punctuation omitted.) Id.

So viewed, the record shows that on May 25, 1994, E.H., Inc., then-owner of the subject property, entered into a two-page "Billboard Sign Lease" with Fendig Outdoor Advertising Company for a term of 15 years ("the 1994 Lease"). The 1994 Lease provided that it "shall continue in full force and effect for its term and thereafter for subsequent successive like terms unless terminated at the end of such term or any successive like term upon written notice by the Lessor or Lessee served sixty (60) days before the end of such term or subsequent like term." It also allowed either party to assign the lease.

In 2000, JAH, Inc. acquired title to the property and acquired E.H., Inc.'s rights as a lessor under the 1994 Lease. Lamar contends in its pleadings below and on appeal that Fendig Outdoor Advertising Company assigned its rights as a lessee under the lease to Lamar at some unspecified time before the expiration of the 1994 Lease. While the record contains no direct evidence establishing the assignment, correspondence between a principal of JAH, Inc. and a manager of Lamar make reference to an existing lease between Lamar and JAH, Inc., and excerpts of deposition testimony[1] indicate that Lamar and JAH, Inc. considered themselves a

_____

[1] We note that the record before us is rather limited as neither party submitted affidavits in support of their motions for summary judgment or filed the entirety of depositions taken in this case.

lessor and lessee of the 1994 Lease. In 2005, JAH, Inc. executed a security deed on the property as collateral for a loan.

On September 7, 2006, three years before the term of the 1994 Lease was set to expire, JAH, Inc. and Lamar entered into a two-page "Sign Location Lease" ("the 2006 Lease") with a term of 15 years "commencing on the first day of the calendar month following the date of completion of construction of the sign or, if this is a renewal Lease, the term and payments begin on May 25, 2009." At some point before the parties entered into the 2006 Lease, a manager for Lamar sent a letter to the principal of JAH, Inc. offering a bonus to JAH, Inc. if it "renew[ed] the lease in advance" of the expiration of the current lease in May of 2009. It is undisputed that Lamar paid JAH, Inc. a bonus of $5,675 for the execution of the 2006 Lease. Differences between the 1994 Lease and the 2006 Lease include: (1) while both leases provided for automatic renewal, the 1994 Lease allowed the lessor to terminate the lease 60 days before its expiration and the 2006 Lease contains no provision allowing the lessor to terminate the lease and prevent automatic renewal; (2) the 2006 Lease contains a new provision prohibiting the lessor from erecting or allowing "any other off-premise advertising structure(s), other than the LESSEE'S, on property owned or controlled by LESSOR within two thousand (2000) feet of LESSEE'S

3

sign"; (3) the 2006 Lease grants the lessee a new right of notice and first refusal if the lessor enters into an agreement with a third party for off-premise advertising on any portion of the leased premises; and (4) the 2006 Lease omitted a provision from the 1994 Lease prohibiting any advertisements on the signs in direct competition with a Huddle House already located on the property and requiring the lessee to provide the lessor with advance notice of advertisers using the sign.

On May 2, 2017, a bank foreclosed on the 2005 security deed, and Budd purchased the property. After Budd unsuccessfully sought to evict Lamar from the property, Budd filed a suit seeking immediate possession of the billboard. After the parties filed cross-motions for summary judgment in their favor, the trial court granted summary judgment in favor of Lamar and denied Budd's motion. It concluded that because the 2006 Lease was a renewal of the 1994 lease that predated the 2005 security deed, the 2006 Lease was not extinguished by the foreclosure.

Budd asserts that the trial court erred by concluding that the 2006 Lease should be considered a renewal of the 1994 Lease, arguing in part, that different terms in the 2006 Lease preclude such a finding as a matter of law. We agree.

When property is leased after the execution of a security deed, an exercise of the power of sale under the security deed divests the leasehold interest and makes the

4

lessee a tenant at sufferance. See *Trust Co. Bank v. Atlanta Speedshop Dragway*, 208 Ga. App. 867, 868 (432 SE2d 608) (1993). "However, where the lease [predeates] the mortgage or deed to secure debt, a sale of the demised premises on foreclosure will not operate to terminate the lease." (Citations and punctuation omitted.) *Wright v. Home Beneficial Life Ins. Co.*, 155 Ga. App. 241, 242 (1) (270 SE2d 400) (1980).

While the parties and the trial court appear to agree that a renewal of the 1994 lease would prevent a divestment of Lamar's leasehold interest through foreclosure, they cite no Georgia cases holding the same. In *Lunsford v. Income Properties*, 254 Ga. 55 (325 SE2d 590) (1985), the Supreme Court of Georgia recognized generally that "the rights of a lessee are superior to subsequent encumbrances against the premises, but inferior to those existing at the commencement of the lease." (Citation and punctuation omitted.) Id. at 56 (1). But, as part of its decision to reverse the trial court's grant of a directed verdict in favor of the lessees, the Supreme Court stated somewhat cryptically: "Also pertinent to this question is the fact that the option to renew the lease was not tendered to the plaintiff, and it was not recorded, until after the institution of this suit." Id. Our research has revealed no clear Georgia authority holding that the renewal of a lease that predated a security deed will not be divested by a foreclosure sale and the parties cite to none.

5

Nonetheless, even if we set that issue aside and assume, without deciding, it to be true,[2] the facts of this case show, without dispute, that Lamar and JAH, Inc. entered into a new lease, rather than a renewal of the 1994 Lease.

> In deciding whether a succeeding lease is substantially a renewal of a preceding lease or altogether a new lease, the determination can be based on whether the succeeding lease employs drastically different terms, not simply somewhat different considerations, i.e., is the lessee occupying substantially the same space under substantially the same terms? If the succeeding lease employs substantially the same terms as the preceding lease, it may be considered a renewal even though technically a new lease.

(Citation and punctuation omitted.) *Brannen/Goddard Co. v. Sheffield, Inc.*, 240 Ga. App. 667, 669 (524 SE2d 534) (1999). On the other hand, if a lease provides for

---

[2] While there are no cases expressly holding that a renewed lease survives foreclosure, Georgia law recognizes that it would survive the ordinary sale of the property to another.

> Where the tenant is in possession of property the purchaser of such property takes subject to the tenant's rights and where a tenant is holding under a written lease the landlord's vendee takes subject to the terms of such written lease and, while the vendee is not put on notice of secret agreements not part of the lease, he is bound by the written provisions thereof.

*Richardson v. Lampley*, 107 Ga. App. 395, 396 (130 SE2d 268) (1963). See also *Turner Communications Corp. v. Hickcox*, 161 Ga. App. 79, 82 (1) (289 SE2d 260) (1982) (buyer purchased property subject to lease for outdoor advertising display, including the renewal provisions of such lease).

"substantially different obligations," *Nebo Ventures*, 326 Ga. App. at 846 (4), or "material terms different from those in the original lease," *Brannen/Goddard*, 240 Ga. App. at 670, it will be considered a new lease rather than a renewal. *Nebo Ventures*, 324 Ga. App. at 846 (4); *Brannen/Goddard*, 240 Ga. App. at 670. In this case, the undisputed provisions of the 2006 Lease imposed material terms different from those in the original lease and substantially different obligations. We therefore conclude that the trial court erred in granting summary judgment in favor of Lamar and in failing to grant summary judgment in favor of Budd on the issue of whether Budd took title to the subject property subject to the 2006 Lease.

*Judgment reversed. McFadden, P. J., and Markle, J., concur*.

## ON MOTION FOR RECONSIDERATION

In a motion for reconsideration, Lamar asserts that we should have considered whether the 2006 Lease changed the "essential elements" or "essential nature" of the 1994 Lease, and concluded that the different terms in the 2006 Lease "involve only peripheral matters." In the alternative, Lamar contends for the first time that an issue of fact exists for a jury to decide.

In support of these assertions, Lamar cites *Cumberland Center Assocs. v. Southeast Mgmt. & Leasing Corp.*, 228 Ga. App. 571 (492 SE2d 546) (1997), overruled on other grounds, *Atlanta Mkt. Mgmt. Co. v. McLane*, 269 Ga. 604, 609 (2) (503 SE2d 278) (1998), and *Westminster Group v. Perimeter 400 ParntersI,* 218 Ga. App. 293 (460 SE2d 827) (1995). Neither of these cases mandate a different result here. In both, we concluded that rate changes did not support a conclusion that an entirely new lease had been executed rather than a renewal because the rate changes could not be characterized as "drastically different." *Cumberland*, 228 Ga. App. at 578; *Westminster*, 218 Ga. App. at 296 (3).[1] In *Bd. of Regents v. A. B. &* E., 182 Ga. App. 671 (357 SE2d 100) (1987), a case upon which Lamar also relies, we concluded

---

[1] In *Westminster*, we also noted that the later lease provided for additional expansion space that was contemplated in the original agreement. 218 Ga. App. at 296 (3).

that a slight reduction in square footage and substantially the same rental payments did not mandate a conclusion that the parties had entered into a new lease. Id. at 674-675. In this case, the 2006 Lease contained far more than a rate change or slightly different square footage, and we cannot say that all of the changes between the 1994 Lease and the 2006 Lease were mere "peripheral matters," see *Cumberland*, 228 Ga. App. at 578, or that genuine issues of material fact exist as to whether the 2006 Lease should be considered a renewal lease. To the extent that we are required to determine whether the 2006 Lease changed "the essential elements or the essential nature of the continued tenancy," *Cumberland*, 228 Ga. App. at 578, we conclude that it did.